LW 6656
**Pitney, Hardin, Kipp & Szuch** LLP
(MAIL TO) P.O. BOX 1945 MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300

Attorneys For Plaintiff
Jackson Hewitt Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON HEWITT INC., a Virginia Corporation, | : |
| Plaintiff, | : |
| v. | : |
| KENDOR, INC., an Alabama corporation; KENNETH HARRIS, an individual, JOYCE SNELLING, an individual; and CHRIS HARGETT, an individual, | : |
| Defendants. | : |

Civil Action No.

**VERIFIED COMPLAINT**

Plaintiff Jackson Hewitt Inc., by its attorneys, Pitney, Hardin, Kipp & Szuch LLP, by way of complaint against defendants Kendor, Inc., Kenneth Harris, Joyce Snelling, and Chris Hargett, says:

1148162A01021704

## PARTIES, JURISDICTION AND VENUE

1.   Plaintiff Jackson Hewitt Inc. ("JHI") is a corporation organized and existing under the laws of the State of Virginia with its principal place of business in Parsippany, New Jersey.

2.   Defendant Kendor, Inc. ("Kendor"), on information and belief, is a corporation organized in the State of Alabama with its principal place of business at 4458 Troy Highway, Montgomery, Alabama.

3.   Defendant Kenneth Harris ("Harris"), on information and belief, is a citizen of the State of Alabama.

4.   Defendant Joyce Snelling ("Snelling"), on information and belief, is a citizen of the State of Alabama.

5.   Defendant Chris Hargett (Hargett"), on information and belief, is a citizen of the State of Alabama.

6.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 inasmuch as the plaintiff and defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.

7.    This   Court   has   personal   jurisdiction   over defendants by virtue of, among other things, Section 28.2 of the Franchise   Agreements,   by   and   between   Kendor   and   JHI   (the "Franchise   Agreements"),   described   in   more   detail   below, pursuant   to   which   Kendor   expressly   consented   "to   personal jurisdiction in all litigation . . . which in any way arises out of [Kendor's] franchise relation with [JHI] . . . any guaranty, or other Collateral Agreements with [JHI] . . . any termination, rescission,   cancellation   or   nonrenewal   of   the   franchise   relation .  .  .  in  the  United  States  District  Court  nearest  to  [JHI's] principal   place   of   business,   (presently   the   District   of   New Jersey, Newark Division)."

8.    Venue   is   proper   in   this   District   pursuant   to Section 28.3 of the Franchise Agreements, pursuant to which, Kendor   expressly   consented   to   venue   in   "the   United   States District   Court   nearest   to   [JHI's]   principal   place   of   business (presently the District of New Jersey, Newark Division)."

### ALLEGATIONS COMMON TO ALL COUNTS

### The Agreements Between The Parties

A.    The Franchise Agreements and Guaranties

9.    In 2002 and 2003, JHI entered into the Franchise Agreements with Kendor for the Franchise and operation of tax

3

return businesses within 5 defined geographic areas, designated by zip code (the "Territories").

10. Under the terms of the Franchise Agreements, Kendor received the exclusive right, subject to certain terms and conditions, to operate income tax return businesses, using the various trade names, trademarks, and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Jackson Hewitt Marks"), as well as JHI's proprietary business methods and software in connection therewith.

11. The Franchise Agreements governed Kendor's business operations in Territories encompassing portions of Alabama (AL). Each of the Franchise Agreements governing JHI's claims contain identical language. (See the August 19, 2002 Franchise Agreement, Territory AL038 annexed as Exhibit A, the August 19, 2002 Franchise Agreement, Territory AL040, annexed as Exhibit B; the August 19, 2002 Franchise Agreement, Territory AL041, annexed as Exhibit C; the August 19, 2002 Franchise Agreement, Territory AL043, annexed as Exhibit D; the January 28, 2003 Franchise Agreement, Territory AL039, annexed as Exhibit E.

4

12. The specific Franchise Agreements governing Kendor's contractual obligations spanned the following Territories:

| Agreement | Territory |
|---|---|
| August 19, 2002 Franchise Agreement | AL038 |
| August 19, 2002 Franchise Agreement | AL040 |
| August 19, 2002 Franchise Agreement | AL041 |
| August 19, 2002 Franchise Agreement | AL043 |
| January 28, 2003 Franchise Agreement | AL039 |

13. The Franchise Agreement for Territory AL039 was for a 10 year term.

14. On August 19, 2002, Kendor and JHI entered into Addendums to the Franchise Agreements for Territories AL038, AL040, AL041 and AL043 (the "Addenda"), which extended the term of the Franchise Agreements from 10 year terms to 15 year terms. True copies of the Addenda are annexed as Exhibit F.

15. Effective as of the date of the Franchise Agreements, Harris, Snelling, and Hargett provided JHI with Guaranties ("Guaranties") of Kendor's obligations under the Franchise Agreements. True copies of the Guaranties are annexed hereto as Exhibit G.

16.   Pursuant to the terms of the Guaranties, Harris, Snelling, and Hargett agreed, among other things, that Kendor "will timely and fully perform every provision, covenant, payment, agreement and undertaking found in the Franchise Agreement[s] . . . and any other Collateral Agreement[s] with [JHI]". (See Exhibit G).

17.   Pursuant to the terms of the Guaranties, Harris, Snelling, and Hargett agreed, among other things, that JHI may "resort to [Harris, Snelling, and Hargett] for payment of any [of Kendor's] liabilities. . . ." (See Exhibit G).

### 1.   Kendor's Contractual Obligations

18.   Pursuant to Section 4 of each of the Franchise Agreements, Kendor was required to pay initial franchise fees (which varied based upon the nature of the territory).

19.   In addition to the foregoing franchise fees, Section 5 of each of the Franchise Agreements required Kendor to make periodic royalty payments for each franchise, representing a percentage of Kendor's "Gross Volume of Business," on a semi-monthly basis from January 1 through April 15, and on a monthly basis from May 1 through December 31.   The "Gross Volume of Business" is generally defined as the total amount of all revenues generated from the tax businesses (see Exhibits A-E Definitions).

20. Moreover, pursuant to Section 6 of each of the Franchise Agreements, Kendor was required to pay advertising and marketing fees equal to a percentage of Kendor's Gross Volume of Business.

21. Pursuant to Section 8 of each of the Franchise Agreements, Kendor was also required to pay an electronic filing fee of $2.00 for every federal tax return filed electronically.

22. Pursuant to Sections 15.1 and 8.7 of each of the Franchise Agreements, respectively, Kendor was required to submit all reports, including Gross Volume Reports, to JHI within the time specified by JHI, and Kendor was required to pay a late fee of $50.00 per office for each Gross Volume Report submitted after its due date.

23. Pursuant to Section 28.18 of each of the Franchise Agreements, Kendor agreed that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees and court costs, incurred by the prevailing party to enforce [the Franchise] Agreement[s] or any other Collateral Agreement including collection of amounts owed under [the Franchise] Agreement[s] or a Collateral Agreement.

24. Pursuant to Section 8.4 of each of the Franchise Agreements, Kendor agreed to pay interest to JHI at the rate of 18% per year, or at the highest legal rate of interest permitted

7

by law, on all amounts due and owing to JHI, which amounts are more than five days overdue.

### 2.   Provisions Governing Termination

25.   Pursuant to Section 20.2 of each of the Franchise Agreements, JHI could terminate a Franchise Agreement "immediately upon delivery of termination notice" to Kendor, for various reasons, including, without limitation, Kendor's failure, on three occasions during one year, to comply with any one or more provisions of the Franchise Agreements, including obligations to pay royalties, marketing and advertising fees, National Account location fees, Promissory Notes, Development Advance Notes, and invoices when due (*see* Exhibits A-E, Section 20.2(k)); and (b) failure to remedy a default of any collateral agreements, including Promissory Notes executed in favor of JHI, within five (5) days of its receipt of notice from JHI (*see* Exhibits A-E, Section 20.2(s)).

26.   In addition to the foregoing provisions, Section 20.3 of each of the Franchise Agreements details Kendor's obligations in the event of a termination of Franchise Agreement, including, without limitation, its obligation:

(a) to immediately pay all amounts owed under the Franchise Agreement and all collateral agreements (Exs. A-E, Section 20.3(a));

(b) to return to JHI all originals and copies of all trade secret and confidential JHI information and client files (*Id.*, Section 20.3(c));

(c) to delete all confidential materials and client files from its computer hard drive (*Id.*, Section 20.3(c));

(d) to comply with the post-term covenant not to compete contained in paragraph 18 of the Franchise Agreement (*Id.*, Section 20.3(h));

(e) to notify the telephone company and all listing agencies and advertising directories for the Territories that Kendor no longer has the right to use such telephone numbers and listings, and authorizing the transfer of same to JHI (*Id.*, Section 20.3(f));

(f) to return to JHI all leased equipment from any leasing program JHI arranges or sponsors (*Id.*, Section 20.3 (j); and

(g) to return to JHI all literature, sign facings, and unused advertising materials bearing the Jackson Hewitt Marks (*Id.*, Section 20.3 (d)).

27. Pursuant to Section 18.2 of each of the Franchise Agreements, Kendor agreed that, for a period of twenty-four months after the effective date of termination, it would not "directly or indirectly prepare or electronically file individual income tax returns, teach courses, offer Bank Products or own, engage in, operate, manage, purchase, invest in . . . franchise, lend money to, lease or sublease to . . . any Competing Tax Business . . . within the Territor[ies] or within an area ten (10) miles outside the boundaries of the Territor[ies] . . . ."  (Exs. A-E, Section 18.2).

28. Pursuant to Section 18.7 of the Franchise Agreements, Kendor expressly acknowledged that the restrictions contained in the Franchise Agreements covenants "are reasonable and necessary to protect [JHI] and [JHI's] franchised system, and that they [would] not impose any undue hardship on [Kendor] since [Kendor has] other skills, experience or education that will afford [it] the opportunity to derive income from other endeavors."

29. Pursuant to Section 18.6 of the Franchise Agreements, Kendor expressly acknowledged JHI's right to obtain

temporary and permanent injunctive relief in the event of Kendor's violation of any of the covenants contained in Section 18 of the Franchise Agreements, and agreed to pay JHI all monies received by Kendor as a result of any violation of the covenants as follow:

> If you violate any of the covenants described above, we are entitled to preliminary and permanent injunctive relief and all monies and other consideration you received as a result of any violation of these covenants, as well as all other damages. These provisions are not exclusive remedies, but cumulative to any and all other remedies available to us in law or equity. (Exs. A-E, Section 18.6).

30. Pursuant to Section 28.14 of the Franchise Agreements, Kendor expressly acknowledged JHI's right to obtain temporary and permanent injunctive relief to enforce Kendor's post-termination obligations, as follows:

> [JHI] or [its] designee may obtain without bond, temporary and permanent injunctions and orders of specific performance to . . . prevent the unauthorized use or disclosure of [JHI's] trade secret, proprietary or confidential information . . . (Exs. A-E, Section 28.14.2).

31. Pursuant to the terms of the Guaranties, Harris, Snelling and Hargett agreed, among other things, that they would personally comply with all of Kendor's post-termination obligations. In addition, Harris, Snelling and Hargett agreed to

11

comply with all of the covenants contained in the Franchise Agreements, including the covenant not to compete, covenant against recruiting or hiring employees, covenant not to solicit, covenant to protect trade secrets, indemnification, and any other covenants which by their terms require performance after the termination of the Franchise Agreements.

### The Promissory Notes

32. In connection with entering into the Franchise Agreements, Kendor, Harris, Snelling, and Hargett (collectively, "defendants") executed four initial fee Promissory Notes in favor of JHI, which allowed defendants to pay initial franchise fees in installments, pursuant to the terms and conditions set forth in the Promissory Notes. True copies of the Promissory Notes are attached hereto as Exhibit H.

33. Under the terms of the Promissory Notes, the entire balance of the Promissory Notes immediately becomes due and payable, without notice or demand, in the event of, *inter alia*, defendants' failure to pay any part of the Promissory Notes, or Kendor's default under the Franchise Agreements or any other agreements with JHI. (See Exhibit H).

34. The Promissory Notes provide that if the Promissory Notes are accelerated and are not paid within ten days after they are due, the outstanding principal balance of

the Promissory Notes shall bear simple interest at a rate equal to the lesser of 18% percent or the highest rate allowed by law.

35.  The Promissory Notes further provide that if the Promissory Notes are collected by or through an attorney at law, JHI "shall be entitled to collect all costs of collection including court costs and reasonable attorneys' fees."

### The Development Advance Notes

36.  In connection with entering into the Franchise Agreements for Territories AL041 and AL040 and effective as of August 19, 2002, Kendor executed a Development Advance Note in the amount of $51,418.00 (the "First Development Note").  A true copy of the First Development Note is attached hereto as Exhibit I.

37.  Pursuant to the terms of the First Development Note, JHI agreed to advance Kendor funds in connection with its Jackson Hewitt income tax preparation business governing Territories AL041 and AL040.

(a)  $20,851.00 payable to Kendor (the "First Payment") when Kendor was in full compliance with the terms of the Franchise Agreements, governing Territories AL041 and AL040, had completed business management training and had opened its Jackson Hewitt Tax Service offices in Territories AL041 and AL040; and

(b)   $30,851.00  on  June  15,  2003  (the  "Second Payment")  if  Kendor  was  in  full  compliance  with  the  Franchise Agreements  and  the  performance  criteria  outlines  and  defined  in the  First  Development  Note  (the  "Performance  Criteria").

38.   Pursuant  to  the  terms  of  the  First  Development Note,  if  Kendor  was  in  compliance  with  its  obligations  under Franchise  Agreements  and  the  First  Development  Note,  and  the Territories  met  certain  conditions,  including  the  Performance Criteria,  portions  of  the  principal  of  the  First  Development Note  would  be  forgiven  on  the  following  dates  and  terms:

On  June  15,  2003  and  each  June 15th  thereafter  – 10%  of  the  First  Payment;  and

On  June  15,  2004  and  each  June 15th  thereafter  – 11.1%  of  the  Second  Payment.

39.   In  connection  with  entering  into  the  Franchise Agreement  for  Territory  AL038  and  effective  as  of  August  19, 2002,  Kendor  executed  a  second  Development  Advance  Note  in  the amount  of  $241,566.00  (the  "Second  Development  Note").   A  true copy  of  the  Second  Development  Note  is  annexed  as  Exhibit  J.

40.   Pursuant  to  the  terms  of  the  Second  Development Note,  JHI  agreed  to  advance  Kendor  funds  in  connection  with  its

Jackson Hewitt income tax preparation business governing Territory AL038 as follows:

(a) $25,000 payable to Kendor (the "Base Payment") within three weeks of the execution of the Franchise Agreement for Territory AL038;

(b) $86,626.00 payable to Kendor (the "First Payment") when Kendor was in full compliance with the terms of the Franchise Agreement governing Territory AL038, had completed business management training and had opened its Jackson Hewitt offices in Territory AL038; and

(c) $129,940.00 payable on June 15, 2003 (the "Second Payment") if Kendor was in full compliance with the Franchise Agreement governing Territory AL038 and the performance criteria contained in the Second Development Note (as defined in the Second Development Note).

41. Pursuant to the terms of the Second Development Note, if Kendor was in compliance with its obligations under Franchise Agreement for Territory AL038 and the Second Development Note, and the Territory met certain conditions, including the Performance Criteria, portions of the principal of the Second Development Note would be forgiven on the following dates and terms:

15

On June 15, 2003 and each June 15th thereafter – 10% of the Base Payment;

On June 15, 2003 and each June 15th thereafter – 10% of the First Payment; and

On June 15, 2004 and each June 15th thereafter – 11.11% of the Second Payment.

42. The First and Second Development Notes (collectively, the "Development Notes"), were executed by Harris, Snelling, and Hargett, thereby making them personally liable for Kendor's obligations under the Development Notes.

43. Under the terms of the Development Notes, the balance of the Development Notes immediately becomes due and payable in full, without notice or demand in the event of, *inter alia*, Kendor's default under the Franchise Agreements or any other agreement with JHI.

44. The Development Notes also provide that if the Development Notes are accelerated and are not paid within ten days after they are due, the outstanding principal balances of the Development Notes shall bear simple interest at a rate of the lesser of 18 percent or the highest rate allowed by law.

45. Pursuant to the terms of the Development Notes defendants agreed that "[i]f any legal action is necessary to enforce or collect [the Development Notes], the prevailing party shall be entitled to reasonable attorneys' fees (including in-

16

house attorneys) and court costs in addition to any other relief to which that party may be entitled."

### The Defendants' Defaults and Termination

46. Kendor failed to timely pay royalty and advertising fees as required by Sections 5 and 6 of the Franchise Agreements and failed to submit Gross Volume Reports within the time required by JHI which resulted in the accrual of unpaid late fees, and other fees.

47. In addition, in breach of their obligations under the Promissory Notes, defendants failed to make timely installment payments under the Promissory Notes, resulting in a past due amount of $76,000 as of January 15, 2004. Under the terms of the Promissory Notes, the principal amount, and all interest accrued, is now due and payable in full. The total amount due and owing under the terms of the Promissory Notes, including interest owed as of January 15, 2004 is $85,182.86.

48. In breach of their obligations under the Development Notes, defendants failed to pay the entire balances of the Development Notes upon default under the Franchise Agreements, resulting in a past due amounts of $132,193 as of January 15, 2004.

49. By letter dated August 13, 2003, a true copy of which is annexed as Exhibit K, JHI advised Kendor that it was in default under the terms of the Franchise Agreements due to its failure to pay royalty, advertising and other fees due and owing JHI, and due to its failure to pay the outstanding amounts owed under the Promissory Notes.

50. In the August 13, 2003 letter, JHI advised Kendor that as of August 13, 2003 it was past due on (1) payments for royalty and advertising fees under the Franchise Agreements in the total amount of $101,619.42; and (2) payments under the Promissory Notes in the amount of $20,708.82. (*See,* Ex. K).

51. Due to Kendor's default, by letter dated September 16, 2003, a true copy of which is annexed as Exhibit L, JHI issued a Notice of Termination, which terminated each of Kendor's Franchise Agreements, effective September 17, 2003.

52. The September 16, 2003 Notice of Termination demanded that Kendor: (1) make full payment of the past due royalty and advertising fees in the amount of $103,111.00; (2) make full payment of the Promissory Notes in the amount of $82,270.00; (3) make full payment of all unpaid principal and interest accrued under the Development Advance Notes; and (3) close and remove all JHI signage from the JHI Territories. (*see* Exhibit L).

## Defendants' Wrongful Failure To Comply With
## Their Post-Termination Obligations

53.   The   September   16,   2003   Notice   of   Termination advised Kendor of its post-termination obligations as set forth in the Franchise Agreements, enclosed JHI's "Procedures After Termination   Or   Expiration",   and   advised   Kendor   that   an inspection would be conducted by JHI of Kendor's Territories to determine compliance with those obligations (*see id.*).

54.   The Notice of Termination, specifically advised Kendor that it was required to:

(a)   change   all   signs   and   any   listings   in directories   and   similar   guides   in   which   the   facilities   were identified as Jackson Hewitt facilities;

(b)   provide   JHI   with   access   to,   and   turn   over, all   client   files   and   information,   including   client   names, addresses,   telephone   numbers   and   social   security   numbers   on Kendor's computers;

(c)   turn   over   originals   and   all   copies   of   client materials,   whether   contained   on   paper,   disk   or   any   other   computer storage media;

(d) forever cease and desist from using, and return to JHI, all of JHI's proprietary materials and all items bearing its service marks, trademarks, logos and other commercial symbols;

(e) comply with the post-termination covenants not to compete as outlined in each of the Franchise Agreements;

(f) comply with the post-termination covenants not to solicit JHI's customers as outlined in each of the Franchise Agreements;

(g) transfer all telephone numbers used or advertised in the Jackson Hewitt Tax Service business to JHI or its designees, with all charges paid in full up to the date of transfer; and

(h) pay all sums due and owing pursuant to the Franchise Agreements and any collateral agreements (*see* "Procedures After Termination or Expiration," annexed to Exhibit L).

55.  Although Kendor was required to fully comply with its post-termination obligations upon termination of the Franchise Agreements, Kendor has failed to immediately turn over all confidential and proprietary information supplied by JHI, and all confidential and proprietary client information.

56.  Notwithstanding  its  contractual  obligations pursuant to Section 20.3 of the Franchise Agreements, Kendor has failed to transfer to JHI all telephone numbers utilized by his former Territories as required.

57.  In  addition,  notwithstanding  its  contractual obligations pursuant to Section 18 of the Franchise Agreements, upon information and belief, Kendor plans on operating competing within its former Territories. Jackson Hewitt businesses.

58.  Kendor has also failed to pay JHI the amounts owed under the initial fee Promissory Notes, Development Notes, and outstanding royalty, advertising, and other fees due and owing, including, without limitation, amounts due and owing for late fees.

59.  In addition, despite their obligations under the Guaranties,  Harris, Snelling, and Hargett have failed to pay JHI the amounts owed under initial fee Promissory Notes, Development Notes, and outstanding royalty, advertising, and other fees due and owing, including, without limitation, amounts due and owing for late fees.

60.  Despite  JHI's  repeated  requests  Kendor,  upon information and belief, (1) is still planning on operating a competing tax businesses at its former Jackson Hewitt locations;

and (2) has not paid any of the outstanding amounts due and owing under the Franchise Agreements.

61. As a result of Kendor's breach of its post-termination obligations, JHI has and will continue to suffer irreparable harm.

### FIRST COUNT
**(Breach Of Contract: Royalty, Advertising And Other Fees)**

62. JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 61 of the Verified Complaint.

63. Pursuant to Sections 4, 5, and 6 of the Franchise Agreements, Kendor was obligated to remit royalty and advertising fees to JHI.

64. Pursuant to Sections 3.10.2, 8.7 and 8.13 of the Franchise Agreements, Kendor was obligated to remit additional fees to JHI, including, without limitation, Gross Volume Report late fees.

65. Despite its obligation to do so, Kendor failed to remit such fees, which are due and owing under the Franchise Agreements.

66. As of January 15, 2004, the amount of the royalty, advertising, and other fees due from Kendor to JHI

pursuant to the Franchise Agreements was approximately $105,958.71.

67. Kendor's failure to remit the agreed fees constitutes a breach of the Franchise Agreements and has damaged JHI.

**WHEREFORE**, JHI demands judgment against Kendor for the royalty, advertising, and other fees due and owing under the terms of the Franchise Agreements, together with attorneys' fees, interest and costs of suit.

## SECOND COUNT
### (Breach of Promissory Notes)

68. JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 67 of the Verified Complaint.

69. Pursuant to the terms of the Promissory Notes Kendor was obligated to pay JHI the principal sums, plus interest due, as set forth therein.

70. Despite its obligation to do so, and despite demand from JHI, Kendor has failed to pay to JHI the amounts due and owing under the Promissory Notes. The total amount now due

and owing under the terms of the Promissory Notes, including interest owed as of January 15, 2004, is $85,182.86.

71. Kendor's failure to make the agreed payments on the Promissory Notes constitutes a breach of the Promissory Notes and has damaged JHI.

**WHEREFORE**, JHI demands judgment against Kendor for the principal amount, plus interest due and owing under the Promissory Notes, together with attorneys' fees and costs of suit.

### THIRD COUNT
**(Breach of Development Advance Notes)**

72. JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 71 of the Verified Complaint.

73. Pursuant to the terms of the Development Notes, Kendor was obligated to pay JHI was obligated to pay JHI the principal sums, as set forth therein.

74. Despite its obligation to do so, Kendor has failed to pay JHI the amounts due and owing under the Development Notes. The total amount now due and owing under the terms of the Development Notes, owed as of January 15, 2004, is $132,193.00.

75.   The failure of Kendor to make the agreed payment on the Development Notes constitutes a breach of the Development Notes and has damaged JHI.

**WHEREFORE**, JHI demands judgment against Kendor for damages in the amount of the principal sum of $132,193.00 due and owing under the Development Notes, together with attorneys' fees and costs of suit.

### FOURTH COUNT
### (Unjust Enrichment)

76.   JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Verified Complaint.

77.   Pursuant to the terms of the Franchise Agreements, Kendor was obligated to remit royalty, advertising, other fees to JHI.

78.   Pursuant to the terms of the Promissory Notes and Development Advance Notes, Kendor was obligated to remit principal sums due and owing to JHI.

79.   Despite its obligation to do so, Kendor has failed to remit royalty, advertising, other fees due and owing under the Franchise Agreements and principal sums due and owing under the Promissory Notes and Development Advance Notes.

80.   Kendor's failure to compensate JHI constitutes unjust enrichment and has damaged JHI.

**WHEREFORE,** JHI demands judgment against Kendor for the royalty, advertising, other fees due and owing under the Franchise Agreements, and principal sums due and owing under the Promissory Notes and Development Advance Notes, together with interest, attorneys' fees, and costs of suit.

## FIFTH COUNT
### (Breach of Contract:  Covenant Not To Compete)

81.   JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 80 of the Verified Complaint.

82.   Pursuant to Section 18.2 of the Franchise Agreements governing Kendor's former Territories, Kendor agreed not to directly or indirectly prepare individual income tax returns for a period of twenty-four months within a ten mile radius of its former Territories, from date of termination of its Franchise Agreements.

83.   Pursuant to Section 18.7, Kendor expressly acknowledged that the restrictions contained in the Franchise Agreements covenants "are reasonable and necessary to protect

26

[JHI] and [JHI's] franchised system, and that they [would] not impose any undue hardship on [Kendor] since [Kendor has] other skills, experience or education that will afford [it] the opportunity to derive income from other endeavors."

84.     Pursuant to Section 18.6, Kendor expressly acknowledged JHI's right to obtain temporary and permanent injunctive relief in the event of Kendor's violation of any of the covenants contained in Section 18 of the Franchise Agreements, including the covenant not to compete set forth in Section 18.2.

85.     Pursuant to the terms of the Guaranties, Harris, Snelling and Hargett agreed, among other things, that they would personally comply with all of Kendor's post-termination obligations, including the covenant not to compete.

86.     Kendor's Territories were terminated effective September 17, 2003.  As such, pursuant to the non-compete provisions of the Franchise Agreements, Kendor is prohibited from directly or indirectly preparing income tax returns within the Territories, or within a ten mile radius of each Territory, until September 17, 2005.

87.     Notwithstanding the foregoing contractual obligations, upon information and belief, Kendor intends to

27

operate competing tax preparation businesses within its former Territories.

88.   As a direct and proximate cause of Kendor's breach, JHI has and will continue to suffer irreparable harm.

**WHEREFORE**, JHI demands judgment against defendants:

(a)  Preliminarily and permanently restraining and enjoining them from engaging in any business, marketing, promoting, or selling individual income tax return preparation services, within a ten mile radius of the Territories, until 24 months after the date of their compliance with Section 18 of the Franchise Agreements; and

(b)  Granting compensatory damages, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

## SIXTH COUNT
### (Breach of Contract:  Post-Termination Obligations)

89.   JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 88 of the Verified Complaint.

90.   Kendor was required to return all confidential, proprietary and trade secret information and client files to JHI upon the termination of the Franchise Agreements.

28

91. Kendor was required to transfer all telephone numbers used or advertised in Kendor's former Territories to JHI or its designees upon termination of the Franchise Agreements, with all charges paid in full up to the date of transfer.

92. Kendor was required to pay all outstanding royalties, marketing fees, and other fees due and owing to JHI upon termination of the Franchise Agreements.

93. Pursuant to the terms of the Guaranties, Harris, Snelling and Hargett agreed, among other things, that they would personally comply with all of Kendor's post-termination obligations.

94. Notwithstanding the foregoing obligations, defendants have wrongfully retained and misappropriated JHI's confidential and proprietary information supplied by JHI to Kendor in connection with Kendor's tax return preparation businesses; has wrongfully retained and misappropriated confidential and proprietary client information from the tax return preparation businesses; and has wrongfully failed to transfer all telephone numbers and accounts used in the former Territories to JHI as required.

95. As a direct and proximate cause of defendants' wrongful failure to comply with their contractual and post-

termination obligations, JHI has been and continues to be injured in its business and property.

**WHEREFORE**, JHI demands judgment against defendants:

(a) Compelling defendants to return any and all of JHI's property and customer information, including, without limitation, those items set forth in Section 20.3 of the Franchise Agreements;

(b) Compelling defendants to transfer to JHI all telephone numbers and accounts utilized in the former Territories;

(c) Compelling defendants to comply with each of the post-termination obligations set forth in Section 20.3 of the Franchise Agreements; and

(d) Preliminarily and permanently restraining and enjoining defendants, and their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling services associated with a tax business within a 10 miles radius of each Territory until 2 years after defendants' date of compliance with their post-termination obligations.

(e)   Granting   compensatory   damages,   interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

### Sixth Count
### (Breach of the Guaranties)

96.   JHI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 95 of the Verified Complaint.

97.   Pursuant to the terms of the Guaranties, Harris, Snelling and Hargett agreed, among other things, that upon a default under the Franchise Agreements, they would immediately make each payment and perform each obligation required of Kendor under the Franchise Agreements.

98.   Despite their obligations to do so, Harris, Snelling, and Hargett have failed to make any payments or perform or cause Kendor to perform each obligation required under the Franchise Agreements.

99.   Pursuant to the Guaranties, Harris, Snelling, and Hargett are liable to for all of the outstanding amounts due and owing to JHI under the Franchise Agreements.

**WHEREFORE,** JHI demands judgment against Harris, Snelling, and Hargett for damages in the amount of all outstanding fees due and owing under the Franchise Agreements, together with interest, attorneys' fees, and costs of suit.

**PITNEY, HARDIN, KIPP & SZUCH LLP**
Attorneys for Plaintiff
Jackson Hewitt Inc.

By: _____

LISA MARTINEZ WOLMART (LW 6656)
Member of the Firm

Dated:   February 17, 2004

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy is not, to my knowledge, the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I further certify that no additional court, arbitration or administrative proceeding is contemplated by plaintiff Jackson Hewitt Inc. at this time.

_____
LISA MARTINEZ WOLMART (LW 6656)

Dated:   February 17, 2004

33

## VERIFICATION

STATE OF NEW JERSEY   )
                      ) ss:
COUNTY OF MORRIS      )


      Curt M. Hapward, of full age, being duly sworn according to law, upon his oath, deposes and says:

      1.   I am Vice President, Franchise Sales Administration and Compliance of Jackson Hewitt Inc. ("JHI"), the plaintiff in this action.

      2.   I have read the foregoing Verified Complaint and all the allegations contained therein.  Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, the records of JHI or information available through employees of JHI.

                                                           _____
                                                            CURT M. HAPWARD

Sworn and subscribed to before
me this /16th day of February, 2004

_____
NOTARY PUBLIC

MARICELA VALENTIN
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Jan. 16, 2006

33