# EXHIBIT F

408481A01020504

# FRANCHISE AGREEMENT ADDENDUM

THIS ADDENDUM TO THE FRANCHISE AGREEMENT is by and between Jackson Hewitt Inc. ("Franchisor") and Kendor, Inc. ("Franchisee") dated as of _August 19, 2002_ Entity # 2411, Territory # AL043 ("the Agreement").

1. The Agreement is supplemented by adding the following Paragraph 29:

## 29. SPECIAL STIPULATIONS

The following special stipulations apply to the Agreement and supersede any inconsistent or conflicting provisions contained therein. These provisions apply only to Franchisee and are not transferable or assignable to any third party in connection with an assignment of the Agreement unless agreed to in advance and in writing by Franchisor.

29.1 *Existing Unaffiliated Practice.* The offering of Financial Services, Bookkeeping, Accounting Services and Corporate Returns by Advanced Business Solutions (the "Unaffiliated Practice") will not constitute a violation of the Covenant Against In Term Competition found in section 18.1 of the Agreement, and will not constitute a violation of the Post Term Covenant Not to Compete found in section 18.2 of this Agreement on the following conditions:

a. There shall be no use or mention of the Jackson Hewitt name or our other Marks in connection with the operation of this Unaffiliated Practice;

b. The operation of the Unaffiliated Practice shall be carried out independently of your Franchised Business; that is, under a different business name, using different software, separate bank accounts, separate insurance, and separate identifiers including, but not limited to, signage, business cards, telephone numbers and stationery, etc.;

c. There shall be no cooperative advertising whatsoever between the operations of the Unaffiliated Practice and your Franchised Business, and all advertising for the Unaffiliated Practice shall be done in such a manner as to not mention the Jackson Hewitt name, our other Marks and/or the common overlap between this Unaffiliated Practice and your Franchised Business;

d. Revenues earned by the Unaffiliated Practice which are not directly of indirectly attributable to or associated with your Franchised Business shall not be considered Gross Volume of Business under the Agreement. Notwithstanding the foregoing, if we determine, in our reasonable judgement, that the revenues earned by the Unaffiliated Practice, to the extent they are from individual tax preparation, bank products or e-filing, are directly or indirectly attributable to or associated with your Franchise Business then such revenues will be deemed Gross Volume of Business and, in addition to our other rights and remedies under the Agreement, you will pay us royalties and fees for such revenues. Such payment will be made within 10 days after your receipt of our invoice for such amount. This subsection d does not override Franchisor's other remedies such as those described in Section 20 of the Agreement;

e. You may not advertise or offer any of the following services in the Unaffiliated Practice without our express, written permission: individual income tax preparation, e-filing, refund anticipation loans, accelerated check refunds and assisted direct deposit;

f. You may not advertise or promote your Jackson Hewitt location(s) at or from the Unaffiliated Practice;

g. We reserve the right to inspect the records of the Unaffiliated Practice in connection with a routine audit of your Franchised Business as is our right under Paragraph 16 of the Agreement; and

h. The parties acknowledge that, as of the date of this Addendum, the services offered by the Unaffiliated Practice are not offered or provided by Jackson Hewitt locations to our customers. In the event that such services are to be offered or provided to our customers by or through the Network we will notify you in writing

JH03-02 Franchise Agreement.doc

of such circumstances. Except as may be agreed in writing by you and Franchisor, you agree to cause the Unaffiliated Practice to [within thirty (30) days after the date of such notice] discontinue offering and/or providing the services offered by the Unaffiliated Practice for the duration of the term of the Agreement. In the event the Unaffiliated Practice fails to discontinue such services, such failure shall be deemed a material breach of the Agreement and we may terminate the Agreement five (5) days after delivery of notice.

29.2     *Paragraph 6.3 Advertising Required by New Franchisees* is deleted in its entirety.

2.     Except as expressly stated in this Addendum, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Addendum.

3.     The terms of this Addendum and the special stipulations provided for herein are expressly confidential between the parties. If for any reason the terms of this Agreement become known to any third party, with the exception of Franchisee's legal counsel, then these special stipulations may become null and void.

4.     All capitalized terms not otherwise defined herein shall have the respective meanings given such terms in the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be executed on this **19th** day of **August** , 2002.

FRANCHISEE: Kendor, Inc.

By: _____
        Kenneth Harris

By: _____
        Chris Hargett

By: _____
        Joyce Shelling

FRANCHISOR: JACKSON HEWITT INC.

By: _____
        Curt M. Hapward
        Vice President of Franchise Sales Administration
        and Compliance

JH103-02 Franchise Agreement.doc

# FRANCHISE AGREEMENT ADDENDUM
# FOR CONVERSION FRANCHISEES OBTAINING A
# DEVELOPMENT ADVANCE

THIS ADDENDUM TO THE FRANCHISE AGREEMENT is by and between Jackson Hewitt Inc. ("Franchisor") and Kendor, Inc. ("Franchisee") dated as of August 8, 2002 Entity # 2411, Territory # AL040 ("the Agreement").

    1.     The Agreement is supplemented by adding the following Paragraph 29:

**29.    SPECIAL STIPULATIONS**

    The following special stipulations apply to the Agreement and supersede any inconsistent or conflicting provisions contained therein. These provisions apply only to Franchisee and are not transferable or assignable to any third party in connection with an assignment of the Agreement unless agreed to in advance and in writing by Franchisor.

    29.1    Paragraph 2.1 is modified by deleting the words "ten (10) years" and inserting, in lieu thereof, the words "fifteen (15) years".

    29.2    Paragraphs 2.3.2 and 2.3.3 are deleted in their entirety; in lieu thereof the following language shall be inserted:

    "2.3.2.  (Intentionally left blank.)

    2.3.3    <u>Minimum Performance</u>:  You must prepare the number of federal income tax returns in the Territory in your fifth Tax Season and each Tax Season after that equal to the minimum number of federal income tax returns required as part of the Performance Criteria contained in your Development Advance Note. If you prepare less than the amount required by the Development Advance Note in the fifth or any subsequent Tax Season, you must (i) submit to us a business improvement plan by June 1 following such Tax Season that we approve, which approval will not be unreasonably withheld or delayed, (ii) implement the plan, and (iii) prepare at least the amount required by the Development Advance Note in the Territory in your next Tax Season. If you do not satisfy all of these conditions, we may, in our discretion, terminate this Agreement for cause by written notice to you between May 1 and September 1 following that Tax Season."

    29.3    You acknowledge and agree that the definition of "customer lists" and the related information described in paragraph 12.3.1 includes the list and information of your customers for the two (2) Tax Seasons prior to the execution of the Agreement.

    29.4    A new paragraph shall be inserted in the Agreement as follows:

    "*14.5 Conversion of Competing Business.*  The parties recognize that it is in their best mutual interests to maintain the marks associated with the Franchised Business as operated by the former owner (*i.e.* "Advanced Business Solutions" and "Fast Tax" and "American Tax") for the first Tax Season after the Effective Date of this Agreement. You will utilize such marks in conjunction with the Marks as approved in advance and in writing by Franchisor. However, you must cease use of these marks prior to the commencement of the second Tax Season after the Effective Date of this Agreement unless you obtain our written consent to continue to use said marks, which consent shall be at our sole discretion."

JH03-02 Franchise Agreement.doc

29.5    A new paragraph shall be inserted in the Agreement as follows:

"*14.6 License of Marks*. You grant to us a non-exclusive license to use the following marks for the term of this Agreement *plus* twenty (20) years: Advanced Business Solutions and Fast Tax and American Tax. You warrant that you have the right to grant the non-exclusive license specified hereunder to us, that you own all title and interest in such marks free and clear of any encumbrances, liens or restrictions and that such marks do not infringe upon or violate any right of any third party. You will indemnify us consistent with the terms of paragraph 27 of the Agreement with respect to any claims, damages or liabilities in connection with or arising out of our use of such marks."

29.6    A new paragraph shall be inserted in the Agreement as follows:

"*20.1a  Additional Termination by You*. You may terminate this Agreement following the tenth (10th) year anniversary date of the Effective Date by sending written notice to our "Legal Department" referencing this provision via certified return receipt requested mail. This termination will not relieve you of any obligation under this Agreement or any Collateral Agreements."

29.7    *Existing Unaffiliated Practice*. The offering of Financial Services, Bookkeeping, Accounting Services and Corporate Returns by Advanced Business Solutions (the "Unaffiliated Practice") will not constitute a violation of the Covenant Against In Term Competition found in section 18.1 of the Agreement, and will not constitute a violation of the Post Term Covenant Not to Compete found in section 18.2 of this Agreement on the following conditions:

a.    There shall be no use or mention of the Jackson Hewitt name or our other Marks in connection with the operation of this Unaffiliated Practice;

b.    The operation of the Unaffiliated Practice shall be carried out independently of your Franchised Business; that is, under a different business name, using different software, separate bank accounts, separate insurance, and separate identifiers including, but not limited to, signage, business cards, telephone numbers and stationery, etc.;

c.    There shall be no cooperative advertising whatsoever between the operations of the Unaffiliated Practice and your Franchised Business, and all advertising for the Unaffiliated Practice shall be done in such a manner as to not mention the Jackson Hewitt name, our other Marks and/or the common overlap between this Unaffiliated Practice and your Franchised Business;

d.    Revenues earned by the Unaffiliated Practice which are not directly of indirectly attributable to or associated with your Franchised Business shall not be considered Gross Volume of Business under the Agreement. Notwithstanding the foregoing, if we determine, in our reasonable judgement, that the revenues earned by the Unaffiliated Practice, to the extent they are from individual tax preparation, bank products or e-filing, are directly or indirectly attributable to or associated with your Franchise Business then such revenues will be deemed Gross Volume of Business and, in addition to our other rights and remedies under the Agreement, you will pay us royalties and fees for such revenues. Such payment will be made within 10 days after your receipt of our invoice for such amount. This subsection d does not override Franchisor's other remedies such as those described in Section 20 of the Agreement;

e.    You may not advertise or offer any of the following services in the Unaffiliated Practice without our express, written permission: individual income tax preparation, e-filing, refund anticipation loans, accelerated check refunds and assisted direct deposit;

f.    You may not advertise or promote your Jackson Hewitt location(s) at or from the Unaffiliated Practice;

g.    We reserve the right to inspect the records of the Unaffiliated Practice in connection with a routine audit of your Franchised Business as is our right under Paragraph 16 of the Agreement; and

h.    The parties acknowledge that, as of the date of this Addendum, the services offered by the Unaffiliated Practice are not offered or provided by Jackson Hewitt locations to our customers. In the event that such services are to be offered or provided to our customers by or through the Network we will notify you in writing of such circumstances. Except as may be agreed in writing by you and Franchisor, you agree to cause the Unaffiliated Practice to [within thirty (30) days after the date of such notice] discontinue offering and/or providing the services offered by the Unaffiliated Practice for the duration of the term of the Agreement. In the event the Unaffiliated Practice fails to discontinue such services, such failure shall be deemed a material breach of the Agreement and we may terminate the Agreement five (5) days after delivery of notice.

29.8    *Paragraph 6.3 Advertising Required by New Franchisees* is deleted in its entirety.

2.    Except as expressly stated in this Addendum, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Addendum.

3.    The terms of this Addendum and the special stipulations provided for herein are expressly confidential between the parties. If for any reason the terms of this Agreement become known to any third party, with the exception of Franchisee's legal counsel, then these special stipulations may become null and void.

4.    All capitalized terms not otherwise defined herein shall have the respective meanings given such terms in the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be executed on this 19th day of August , 2002.

FRANCHISEE: Kendor, Inc.

By: _____
      Kenneth Harris

By: _____
      Chris Hargett

By: _____
      Joyce Snelling

FRANCHISOR: JACKSON HEWITT INC.

By: _____
      Curt M. Hayward
      Vice President of Franchise Sales Administration
      and Compliance

# FRANCHISE AGREEMENT ADDENDUM
# FOR CONVERSION FRANCHISEES OBTAINING A
# DEVELOPMENT ADVANCE

THIS ADDENDUM TO THE FRANCHISE AGREEMENT is by and between Jackson Hewitt Inc. ("Franchisor") and Kendor, Inc. ("Franchisee") dated as of August 19, 2002, Entity # 2411, Territory # AL041 ("the Agreement").

    1.       The Agreement is supplemented by adding the following Paragraph 29:

## 29.    SPECIAL STIPULATIONS

    The following special stipulations apply to the Agreement and supersede any inconsistent or conflicting provisions contained therein. These provisions apply only to Franchisee and are not transferable or assignable to any third party in connection with an assignment of the Agreement unless agreed to in advance and in writing by Franchisor.

    29.1     Paragraph 2.1 is modified by deleting the words "ten (10) years" and inserting, in lieu thereof, the words "fifteen (15) years".

    29.2     Paragraphs 2.3.2 and 2.3.3 are deleted in their entirety; in lieu thereof the following language shall be inserted:

    "2.3.2. (Intentionally left blank.)

    2.3.3    Minimum Performance:  You must prepare the number of federal income tax returns in the Territory in your fifth Tax Season and each Tax Season after that equal to the minimum number of federal income tax returns required as part of the Performance Criteria contained in your Development Advance Note. If you prepare less than the amount required by the Development Advance Note in the fifth or any subsequent Tax Season, you must (i) submit to us a business improvement plan by June 1 following such Tax Season that we approve, which approval will not be unreasonably withheld or delayed, (ii) implement the plan, and (iii) prepare at least the amount required by the Development Advance Note in the Territory in your next Tax Season. If you do not satisfy all of these conditions, we may, in our discretion, terminate this Agreement for cause by written notice to you between May 1 and September 1 following that Tax Season."

    29.3     You acknowledge and agree that the definition of "customer lists" and the related information described in paragraph 12.3.1 includes the list and information of your customers for the two (2) Tax Seasons prior to the execution of the Agreement.

    29.4     A new paragraph shall be inserted in the Agreement as follows:

    "*14.5 Conversion of Competing Business.*  The parties recognize that it is in their best mutual interests to maintain the marks associated with the Franchised Business as operated by the former owner (*i.e.* "Advanced Business Solutions" and "Fast Tax" and "American Tax") for the first Tax Season after the Effective Date of this Agreement. You will utilize such marks in conjunction with the Marks as approved in advance and in writing by Franchisor. However, you must cease use of these marks prior to the commencement of the second Tax Season after the Effective Date of this Agreement unless you obtain our written consent to continue to use said marks, which consent shall be at our sole discretion."

29.5    A new paragraph shall be inserted in the Agreement as follows:

"*14.6 License of Marks.* You grant to us a non-exclusive license to use the following marks for the term of this Agreement *plus* twenty (20) years: Advanced Business Solutions and Fast Tax and American Tax. You warrant that you have the right to grant the non-exclusive license specified hereunder to us, that you own all title and interest in such marks free and clear of any encumbrances, liens or restrictions and that such marks do not infringe upon or violate any right of any third party. You will indemnify us consistent with the terms of paragraph 27 of the Agreement with respect to any claims, damages or liabilities in connection with or arising out of our use of such marks."

29.6    A new paragraph shall be inserted in the Agreement as follows:

"*20.1a Additional Termination by You.* You may terminate this Agreement following the tenth (10th) year anniversary date of the Effective Date by sending written notice to our "Legal Department" referencing this provision via certified return receipt requested mail. This termination will not relieve you of any obligation under this Agreement or any Collateral Agreements."

29.7    *Existing Unaffiliated Practice.* The offering of Financial Services, Bookkeeping, Accounting Services and Corporate Returns by Advanced Business Solutions (the "Unaffiliated Practice") will not constitute a violation of the Covenant Against In Term Competition found in section 18.1 of the Agreement, and will not constitute a violation of the Post Term Covenant Not to Compete found in section 18.2 of this Agreement on the following conditions:

a.    There shall be no use or mention of the Jackson Hewitt name or our other Marks in connection with the operation of this Unaffiliated Practice;

b.    The operation of the Unaffiliated Practice shall be carried out independently of your Franchised Business; that is, under a different business name, using different software, separate bank accounts, separate insurance, and separate identifiers including, but not limited to, signage, business cards, telephone numbers and stationery, etc.;

c.    There shall be no cooperative advertising whatsoever between the operations of the Unaffiliated Practice and your Franchised Business, and all advertising for the Unaffiliated Practice shall be done in such a manner as to not mention the Jackson Hewitt name, our other Marks and/or the common overlap between this Unaffiliated Practice and your Franchised Business;

d.    Revenues earned by the Unaffiliated Practice which are not directly or indirectly attributable to or associated with your Franchised Business shall not be considered Gross Volume of Business under the Agreement. Notwithstanding the foregoing, if we determine, in our reasonable judgement, that the revenues earned by the Unaffiliated Practice, to the extent they are from individual tax preparation, bank products or e-filing, are directly or indirectly attributable to or associated with your Franchise Business then such revenues will be deemed Gross Volume of Business and, in addition to our other rights and remedies under the Agreement, you will pay us royalties and fees for such revenues. Such payment will be made within 10 days after your receipt of our invoice for such amount. This subsection d does not override Franchisor's other remedies such as those described in Section 20 of the Agreement;

e.    You may not advertise or offer any of the following services in the Unaffiliated Practice without our express, written permission: individual income tax preparation, e-filing, refund anticipation loans, accelerated check refunds and assisted direct deposit;

f.    You may not advertise or promote your Jackson Hewitt location(s) at or from the Unaffiliated Practice;

g.    We reserve the right to inspect the records of the Unaffiliated Practice in connection with a routine audit of your Franchised Business as is our right under Paragraph 16 of the Agreement; and

h.     The parties acknowledge that, as of the date of this Addendum, the services offered by the Unaffiliated Practice are not offered or provided by Jackson Hewitt locations to our customers.  In the event that such services are to be offered or provided to our customers by or through the Network we will notify you in writing of such circumstances.  Except as may be agreed in writing by you and Franchisor, you agree to cause the Unaffiliated Practice to [within thirty (30) days after the date of such notice] discontinue offering and/or providing the services offered by the Unaffiliated Practice for the duration of the term of the Agreement.  In the event the Unaffiliated Practice fails to discontinue such services, such failure shall be deemed a material breach of the Agreement and we may terminate the Agreement five (5) days after delivery of notice.

29.8     *Paragraph 6.3 Advertising Required by New Franchisees* is deleted in its entirety.

2.     Except as expressly stated in this Addendum, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Addendum.

3.     The terms of this Addendum and the special stipulations provided for herein are expressly confidential between the parties. If for any reason the terms of this Agreement become known to any third party, with the exception of Franchisee's legal counsel, then these special stipulations may become null and void.

4.     All capitalized terms not otherwise defined herein shall have the respective meanings given such terms in the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be executed on this __19th__ day of __August__, 2002.

FRANCHISEE: Kendor, Inc.

By: _____
        Kenneth Harris

By: _____
        Chris Targett

By: _____
        Joyce Snelling

FRANCHISOR: JACKSON HEWITT INC.

By: _____
        Curt M. Hapward
        Vice President of Franchise Sales Administration
        and Compliance

# FRANCHISE AGREEMENT ADDENDUM
# FOR CONVERSION FRANCHISEES OBTAINING A
# DEVELOPMENT ADVANCE

THIS ADDENDUM TO THE FRANCHISE AGREEMENT is by and between Jackson Hewitt Inc. ("Franchisor") and Kendor, Inc. ("Franchisee") dated as of August 19, 2002 , Entity # 2411, Territory # AL.038 ("the Agreement").

1.     The Agreement is supplemented by adding the following Paragraph 29:

## 29.    SPECIAL STIPULATIONS

The following special stipulations apply to the Agreement and supersede any inconsistent or conflicting provisions contained therein. These provisions apply only to Franchisee and are not transferable or assignable to any third party in connection with an assignment of the Agreement unless agreed to in advance and in writing by Franchisor.

29.1     Paragraph 2.1 is modified by deleting the words "ten (10) years" and inserting, in lieu thereof, the words "fifteen (15) years".

29.2     Paragraphs 2.3.2 and 2.3.3 are deleted in their entirety; in lieu thereof the following language shall be inserted:

"2.3.2.   (Intentionally left blank.)

2.3.3   Minimum Performance:   You must prepare the number of federal income tax returns in the Territory in your fifth Tax Season and each Tax Season after that equal to the minimum number of federal income tax returns required as part of the Performance Criteria contained in your Development Advance Note. If you prepare less than the amount required by the Development Advance Note in the fifth or any subsequent Tax Season, you must (i) submit to us a business improvement plan by June 1 following such Tax Season that we approve, which approval will not be unreasonably withheld or delayed, (ii) implement the plan, and (iii) prepare at least the amount required by the Development Advance Note in the Territory in your next Tax Season. If you do not satisfy all of these conditions, we may, in our discretion, terminate this Agreement for cause by written notice to you between May 1 and September 1 following that Tax Season."

29.3     You acknowledge and agree that the definition of "customer lists" and the related information described in paragraph 12.3.1 includes the list and information of your customers for the two (2) Tax Seasons prior to the execution of the Agreement.

29.4     A new paragraph shall be inserted in the Agreement as follows:

"*14.5 Conversion of Computing Business.*   The parties recognize that it is in their best mutual interests to maintain the marks associated with the Franchised Business as operated by the former owner (*i.e.* "Advanced Business Solutions" and "Fast Tax" and "American Tax") for the first Tax Season after the Effective Date of this Agreement. You will utilize such marks in conjunction with the Marks as approved in advance and in writing by Franchisor. However, you must cease use of these marks prior to the commencement of the second Tax Season after the Effective Date of this Agreement unless you obtain our written consent to continue to use said marks, which consent shall be at our sole discretion."

JH03-02 Franchise Agreement.doc

29.5    A new paragraph shall be inserted in the Agreement as follows:

"*14.6 License of Marks*. You grant to us a non-exclusive license to use the following marks for the term of this Agreement *plus* twenty (20) years: Advanced Business Solutions, Fast Tax and American Tax. You warrant that you have the right to grant the non-exclusive license specified hereunder to us, that you own all title and interest in such marks free and clear of any encumbrances, liens or restrictions and that such marks do not infringe upon or violate any right of any third party. You will indemnify us consistent with the terms of paragraph 27 of the Agreement with respect to any claims, damages or liabilities in connection with or arising out of our use of such marks."

29.6    A new paragraph shall be inserted in the Agreement as follows:

"*20.1a  Additional Termination by You*. You may terminate this Agreement following the tenth (10th) year anniversary date of the Effective Date by sending written notice to our "Legal Department" referencing this provision via certified return receipt requested mail.  This termination will not relieve you of any obligation under this Agreement or any Collateral Agreements."

29.7    *Existing  Unaffiliated Practice*. The offering of Financial Services, Bookkeeping, Accounting Services and Corporate Returns by Advanced Business Solutions (the "Unaffiliated Practice") will not constitute a violation of the Covenant Against In Term Competition found in section 18.1 of the Agreement, and will not constitute a violation of the Post Term Covenant Not to Compete found in section 18.2 of this Agreement on the following conditions:

a.      There shall be no use or mention of the Jackson Hewitt name or our other Marks in connection with the operation of this Unaffiliated Practice;

b.      The operation of the Unaffiliated Practice shall be carried out independently of your Franchised Business; that is, under a different business name, using different software, separate bank accounts, separate insurance, and separate identifiers including, but not limited to, signage, business cards, telephone numbers and stationery, etc.;

c.      There shall be no cooperative advertising whatsoever between the operations of the Unaffiliated Practice and your Franchised Business, and all advertising for the Unaffiliated Practice shall be done in such a manner as to not mention the Jackson Hewitt name, our other Marks and/or the common overlap between this Unaffiliated Practice and your Franchised Business;

d.      Revenues earned by the Unaffiliated Practice which are not directly of indirectly attributable to or associated with your Franchised Business shall not be considered Gross Volume of Business under the Agreement.  Notwithstanding the foregoing, if we determine, in our reasonable judgement, that the revenues earned by the Unaffiliated Practice, to the extent they are from individual tax preparation, bank products or e-filing, are directly or indirectly attributable to or associated with your Franchise Business then such revenues will be deemed Gross Volume of Business and, in addition to our other rights and remedies under the Agreement, you will pay us royalties and fees for such revenues.  Such payment will be made within 10 days after your receipt of our invoice for such amount.  This subsection d does not override Franchisor's other remedies such as those described in Section 20 of the Agreement;

e.      You may not advertise or offer any of the following services in the Unaffiliated Practice without our express, written permission: individual income tax preparation, e-filing, refund anticipation loans, accelerated check refunds and assisted direct deposit;

f.      You may not advertise or promote your Jackson Hewitt location(s) at or from the Unaffiliated Practice;

g.      We reserve the right to inspect the records of the Unaffiliated Practice in connection with a routine audit of your Franchised Business as is our right under Paragraph 16 of the Agreement; and

JH03-02 Franchise Agreement.doc

h.    The parties acknowledge that, as of the date of this Addendum, the services offered by the Unaffiliated Practice are not offered or provided by Jackson Hewitt locations to our customers. In the event that such services are to be offered or provided to our customers by or through the Network we will notify you in writing of such circumstances. Except as may be agreed in writing by you and Franchisor, you agree to cause the Unaffiliated Practice to [within thirty (30) days after the date of such notice] discontinue offering and/or providing the services offered by the Unaffiliated Practice for the duration of the term of the Agreement. In the event the Unaffiliated Practice fails to discontinue such services, such failure shall be deemed a material breach of the Agreement and we may terminate the Agreement five (5) days after delivery of notice.

29.8    *Paragraph 6.3 Advertising Required by New Franchisees* is deleted in its entirety.

2.    Except as expressly stated in this Addendum, no further additions, modifications or deletions to the Agreement are intended by the parties or made by this Addendum.

3.    The terms of this Addendum and the special stipulations provided for herein are expressly confidential between the parties. If for any reason the terms of this Agreement become known to any third party, with the exception of Franchisee's legal counsel, then these special stipulations may become null and void.

4.    All capitalized terms not otherwise defined herein shall have the respective meanings given such terms in the Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Addendum to be executed on this 19th day of August, 2002.

FRANCHISEE: Kendot, Inc.

By: _____
      Kenneth Harris

By: _____
      Chris Harriett

By: _____
      Joyce Snelling

FRANCHISOR: JACKSON HEWITT INC.

By: _____
      Curt M. Hapward
      Vice President of Franchise Sales Administration
      and Compliance

# EXHIBIT G

408481A01020504

## SCHEDULE C

## GUARANTY OF FRANCHISEE'S UNDERTAKINGS

In consideration of, and as an inducement to Jackson Hewitt Inc. ("Jackson Hewitt"), to execute the Franchise Agreement dated _____ **August 19, 2002** , between Kendor, Inc., the Franchisee, and Jackson Hewitt, the undersigned Guarantor(s) guarantee(s) that Franchisee will timely and fully perform each and every provision, covenant, payment, agreement and undertaking found in the Franchise Agreement, the Software License Agreement, the Security Agreement, any Release, any Note, any agreement with a third party for any program arranged or sponsored by Jackson Hewitt (the "liabilities"), and any other Collateral Agreement with Jackson Hewitt. This guarantee is absolute, irrevocable, and continuing, and covers any and all present or future obligations, including all post-termination obligations. In addition, Guarantors agree to comply personally with all the following covenants: In Term Competition; Covenant Not to Compete; Covenant Against Recruiting or Hiring Our Employees; Covenant Not to Solicit; Covenant to Protect Trade Secrets, Indemnification, and any other covenants which by their terms require performance after the termination of the Franchise Agreement. The obligations of the Guarantor(s) shall survive any expiration or termination of the Franchise Agreement or this Guaranty, including the sale of a majority of the assets of the Franchised Business.

Guarantor(s) acknowledge(s) that Jackson Hewitt, its successors and assigns, may from time to time, without notice to Guarantor(s), do any or all of the following: (a) resort to Guarantor(s) for payment of any liabilities, whether or not it or its successors have resorted to any property securing any of the liabilities, or proceed against any of the Guarantor(s) or against any party primarily or secondarily liable on any of the liabilities covered by this guaranty; (b) release or compromise any liability of any Guarantor(s), or the liability of any party who is primarily or secondarily liable on any of the liabilities covered by this guaranty; (c) extend, renew or credit any of the liabilities for any period (whether or not the original period); (d) alter, amend or exchange any of the liabilities; or, (e) give any other form of indulgence, whether under the Franchise Agreement or not.

Guarantor(s) waive(s) presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including, but not limited to, notice of acceptance, notice of all contracts and commitments, notice of the existence or creation of any liabilities under the Franchise Agreement, and of its amount and terms, and notices of all defaults, disputes or controversies between it and Franchisee resulting from the Franchise Agreement or otherwise, and the settlement, compromise or adjustment of any liabilities.

Any waiver, extension of time or other indulgence granted from time to time by Jackson Hewitt or its agents, successors or assigns with respect to the Franchise Agreement or this guaranty shall in no way modify or amend this guaranty, which shall be continuing, absolute, unconditional and irrevocable. Guarantor(s) authorize(s) Jackson Hewitt to order updated credit reports on Guarantor(s) at any time without notice. All Guarantor(s) are jointly, severally and primarily liable.

Guarantor(s) waive(s) any defense(s) arising by reason of any disability, insolvency, lack of authority or power, death, insanity, minority, dissolution or any other defense of Franchisee, any Guarantor(s), or any other surety or Guarantor of the obligations of the Franchise Agreement.

In witness whereof, each Guarantor has executed and sealed this guaranty under seal effective on the date of the Franchise Agreement.

/s/ _Kenneth H._ . SEAL
Signature of Guarantor – Kenneth Harris

1430 Rosemil Drive
Address
Montgomery, AL  36117

334-215-0607
Home Telephone No.

/s/ _____ SEAL
Signature of Guarantor – Chris Hargett

948 Excelsior Drive
Address
Montgomery, AL  36117

334-272-1397
Home Telephone No.

/s/ _Joyce Snelling_ SEAL
Signature of Guarantor – Joyce Snelling

6709 Wood Glen Court
Address
Montgomery, AL  36117

334-272-7850
Home Telephone No.

### SCHEDULE C

### GUARANTY OF FRANCHISEE'S UNDERTAKINGS

In consideration of, and as an inducement to Jackson Hewitt Inc. ("Jackson Hewitt"), to execute the Franchise Agreement dated _____ *August 19, 2002* _____, between Kendor, Inc., the Franchisee, and Jackson Hewitt, the undersigned Guarantor(s) guarantee(s) that Franchisee will timely and fully perform each and every provision, covenant, payment, agreement and undertaking found in the Franchise Agreement, the Software License Agreement, the Security Agreement, any Release, any Note, any agreement with a third party for any program arranged or sponsored by Jackson Hewitt (the "liabilities"), and any other Collateral Agreement with Jackson Hewitt. This guarantee is absolute, irrevocable, and continuing, and covers any and all present or future obligations, including all post-termination obligations. In addition, Guarantors agree to comply personally with all the following covenants: In Term Competition; Covenant Not to Compete; Covenant Against Recruiting or Hiring Our Employees; Covenant Not to Solicit; Covenant to Protect Trade Secrets, Indemnification, and any other covenants which by their terms require performance after the termination of the Franchise Agreement. The obligations of the Guarantor(s) shall survive any expiration or termination of the Franchise Agreement or this Guaranty, including the sale of a majority of the assets of the Franchised Business.

Guarantor(s) acknowledge(s) that Jackson Hewitt, its successors and assigns, may from time to time, without notice to Guarantor(s), do any or all of the following: (a) resort to Guarantor(s) for payment of any liabilities, whether or not it or its successors have resorted to any property securing any of the liabilities, or proceed against any of the Guarantor(s) or against any party primarily or secondarily liable on any of the liabilities covered by this guaranty; (b) release or compromise any liability of any Guarantor(s), or the liability of any party who is primarily or secondarily liable on any of the liabilities covered by this guaranty; (c) extend, renew or credit any of the liabilities for any period (whether or not the original period); (d) alter, amend or exchange any of the liabilities; or, (e) give any other form of indulgence, whether under the Franchise Agreement or not.

Guarantor(s) waive(s) presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including, but not limited to, notice of acceptance, notice of all contracts and commitments, notice of the existence or creation of any liabilities under the Franchise Agreement, and of its amount and terms, and notices of all defaults, disputes or controversies between it and Franchisee resulting from the Franchise Agreement or otherwise, and the settlement, compromise or adjustment of any liabilities.

Any waiver, extension of time or other indulgence granted from time to time by Jackson Hewitt or its agents, successors or assigns with respect to the Franchise Agreement or this guaranty shall in no way modify or amend this guaranty, which shall be continuing, absolute, unconditional and irrevocable. Guarantor(s) authorize(s) Jackson Hewitt to order updated credit reports on Guarantor(s) at any time without notice. All Guarantor(s) are jointly, severally and primarily liable.

Guarantor(s) waive(s) any defense arising by reason of any disability, insolvency, lack of authority or power, death, insanity, minority, dissolution or any other defense of Franchisee, any Guarantor(s), or any other surety or Guarantor of the obligations of the Franchise Agreement.

In witness whereof, each Guarantor has executed and sealed this guaranty under seal effective on the date of the Franchise Agreement.

/s/ _Kenneth Harris_ _____ SEAL
Signature of Guarantor – Kenneth Harris

1430 Rosemil Drive
Address
Montgomery, AL  36117

334-215-0607
Home Telephone No.

/s/ _____ SEAL
Signature of Guarantor – Chris Hargett

948 Excelsior Drive
Address
Montgomery, AL  36117

334-272-1397
Home Telephone No.

/s/ _Joyce Snelling_ _____ SEAL
Signature of Guarantor – Joyce Snelling

6709 Wood Glen Court
Address
Montgomery, AL  36117

334-272-7850
Home Telephone No.

**SCHEDULE C**

**GUARANTY OF FRANCHISEE'S UNDERTAKINGS**

In consideration of, and as an inducement to Jackson Hewitt Inc. ("Jackson Hewitt"), to execute the Franchise Agreement dated _____ August 19, 2002 _____, between Kendor, Inc., the Franchisee, and Jackson Hewitt, the undersigned Guarantor(s) guarantee(s) that Franchisee will timely and fully perform each and every provision, covenant, payment, agreement and undertaking found in the Franchise Agreement, the Software License Agreement, the Security Agreement, any Release, any Note, any agreement with a third party for any program arranged or sponsored by Jackson Hewitt (the "liabilities"), and any other Collateral Agreement with Jackson Hewitt. This guarantee is absolute, irrevocable, and continuing, and covers any and all present or future obligations, including all post-termination obligations. In addition, Guarantors agree to comply personally with all the following covenants: In Term Competition; Covenant Not to Compete; Covenant Against Recruiting or Hiring Our Employees; Covenant Not to Solicit; Covenant to Protect Trade Secrets, Indemnification, and any other covenants which by their terms require performance after the termination of the Franchise Agreement. The obligations of the Guarantor(s) shall survive any expiration or termination of the Franchise Agreement or this Guaranty, including the sale of a majority of the assets of the Franchised Business.

Guarantor(s) acknowledge(s) that Jackson Hewitt, its successors and assigns, may from time to time, without notice to Guarantor(s), do any or all of the following: (a) resort to Guarantor(s) for payment of any liabilities, whether or not it or its successors have resorted to any property securing any of the liabilities, or proceed against any of the Guarantor(s) or against any party primarily or secondarily liable on any of the liabilities covered by this guaranty; (b) release or compromise any liability of any Guarantor(s), or the liability of any party who is primarily or secondarily liable on any of the liabilities covered by this guaranty; (c) extend, renew or credit any of the liabilities for any period (whether or not the original period); (d) alter, amend or exchange any of the liabilities; or, (e) give any other form of indulgence, whether under the Franchise Agreement or not.

Guarantor(s) waive(s) presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including, but not limited to, notice of acceptance, notice of all contracts and commitments, notice of the existence or creation of any liabilities under the Franchise Agreement, and of its amount and terms, and notices of all defaults, disputes or controversies between it and Franchisee resulting from the Franchise Agreement or otherwise, and the settlement, compromise or adjustment of any liabilities.

Any waiver, extension of time or other indulgence granted from time to time by Jackson Hewitt or its agents, successors or assigns with respect to the Franchise Agreement or this guaranty shall in no way modify or amend this guaranty, which shall be continuing, absolute, unconditional and irrevocable. Guarantor(s) authorize(s) Jackson Hewitt to order updated credit reports on Guarantor(s) at any time without notice. All Guarantor(s) are jointly, severally and primarily liable.

Guarantor(s) waive(s) any defense(s) arising by reason of any disability, insolvency, lack of authority or power, death, insanity, minority, dissolution or any other defense of Franchisee, any Guarantor(s), or any other surety or Guarantor of the obligations of the Franchise Agreement.

In witness whereof, each Guarantor has executed and sealed this guaranty under seal effective on the date of the Franchise Agreement.

/s/ _____ SEAL
Signature of Guarantor – Kenneth Harris

1430 Rosemil Drive
Address
Montgomery, AL 36117

334-215-0607
Home Telephone No.

/s/ _____ SEAL
Signature of Guarantor – Chris Hargett

948 Excelsior Drive
Address
Montgomery, AL 36117

334-272-1397
Home Telephone No.

/s/ _____ SEAL
Signature of Guarantor – Joyce Snelling

6709 Wood Glen Court
Address
Montgomery, AL 36117

334-272-7850
Home Telephone No.

JH03_02 Franchise Agreement.doc                    3

**SCHEDULE C**

**GUARANTY OF FRANCHISEE'S UNDERTAKINGS**

In consideration of, and as an inducement to Jackson Hewitt Inc. ("Jackson Hewitt"), to execute the Franchise Agreement dated _____ _August 19, 2002_____, between Kendor, Inc., the Franchisee, and Jackson Hewitt, the undersigned Guarantor(s) guarantee(s) that Franchisee will timely and fully perform each and every provision, covenant, payment, agreement and undertaking found in the Franchise Agreement, the Software License Agreement, the Security Agreement, any Release, any Note, any agreement with a third party for any program arranged or sponsored by Jackson Hewitt (the "liabilities"), and any other Collateral Agreement with Jackson Hewitt. This guarantee is absolute, irrevocable, and continuing, and covers any and all present or future obligations, including all post-termination obligations. In addition, Guarantors agree to comply personally with all the following covenants: In Term Competition; Covenant Not to Compete; Covenant Against Recruiting or Hiring Our Employees; Covenant Not to Solicit; Covenant to Protect Trade Secrets, Indemnification, and any other covenants which by their terms require performance after the termination of the Franchise Agreement. The obligations of the Guarantor(s) shall survive any expiration or termination of the Franchise Agreement or this Guaranty, including the sale of a majority of the assets of the Franchised Business.

Guarantor(s) acknowledge(s) that Jackson Hewitt, its successors and assigns, may from time to time, without notice to Guarantor(s), do any or all of the following: (a) resort to Guarantor(s) for payment of any liabilities, whether or not it or its successors have resorted to any property securing any of the liabilities, or proceed against any of the Guarantor(s) or against any party primarily or secondarily liable on any of the liabilities covered by this guaranty; (b) release or compromise any liability of any Guarantor(s), or the liability of any party who is primarily or secondarily liable on any of the liabilities covered by this guaranty; (c) extend, renew or credit any of the liabilities for any period (whether or not the original period); (d) alter, amend or exchange any of the liabilities; or, (e) give any other form of indulgence, whether under the Franchise Agreement or not.

Guarantor(s) waive(s) presentment, demand, notice of dishonor, protest, nonpayment and all other notices whatsoever, including, but not limited to, notice of acceptance, notice of all contracts and commitments, notice of the existence or creation of any liabilities under the Franchise Agreement, and of its amount and terms, and notices of all defaults, disputes or controversies between it and Franchisee resulting from the Franchise Agreement or otherwise, and the settlement, compromise or adjustment of any liabilities.

Any waiver, extension of time or other indulgence granted from time to time by Jackson Hewitt or its agents, successors or assigns with respect to the Franchise Agreement or this guaranty shall in no way modify or amend this guaranty, which shall be continuing, absolute, unconditional and irrevocable. Guarantor(s) authorize(s) Jackson Hewitt to order updated credit reports on Guarantor(s) at any time without notice. All Guarantor(s) are jointly, severally and primarily liable.

Guarantor(s) waive(s) any defense(s) arising by reason of any disability, insolvency, lack of authority or power, death, insanity, minority, dissolution or any other defense of Franchisee, any Guarantor(s), or any other surety or Guarantor of the obligations of the Franchise Agreement.

In witness whereof, each Guarantor has executed and sealed this guaranty under seal effective on the date of the Franchise Agreement.

/s/ _Kenneth Harris_____ SEAL
Signature of Guarantor – Kenneth Harris

1430 Rosemil Drive
Address
Montgomery, AL 36117

334-215-0607
Home Telephone No.

/s/ _____ SEAL
Signature of Guarantor – Chris Hargett

948 Excelsior Drive
Address
Montgomery, AL 36117

334-272-1397
Home Telephone No.

/s/ _Joyce Snelling_ SEAL
Signature of Guarantor – Joyce Snelling

6709 Wood Glen Court
Address
Montgomery, AL 36117

334-272-7850
Home Telephone No.

# EXHIBIT H

408481A01020504

**EXHIBIT D-1**
# PROMISSORY NOTE

$19,000.00                                          Parsippany, New Jersey
Entity Number: 2411                                 Date: Jan. 28, 2003
Territory Number(s): AL039

FOR VALUE RECEIVED, the undersigned, Kendor, Inc., 1718 Mt. Meigs Road, Montgomery, AL 36107 ("Maker"), and Kenneth Harris, 1430 Rosemil Drive, Montgomery, AL 36117("Co-Maker"), and Chris Hargett, 948 Excelsior Drive, Montgomery, AL 36117 ("Co-Maker"), and Joyce Snelling, 6709 Wood Glen Court, Montgomery, AL 36117 ("Co-Maker"), jointly and severally, promise to pay to the order of Jackson Hewitt, Inc. at 7 Sylvan Way, Parsippany, NJ, 07054 a Virginia corporation ("Holder"), in the manner hereinafter specified, the principal sum of NINETEEN THOUSAND DOLLARS ($19,000.00) with interest at the rate of Nine percent (9%) per annum, on the unpaid principal and any past due interest computed from the date above.

This Note shall be payable per the following terms:

**$6,333.00 plus interest due and payable on February 28, 2004.**
**$6,333.00 plus interest due and payable on February 28, 2005.**
**$6,334.00 plus interest due and payable on February 28, 2006.**

All outstanding principal and accrued interest shall be due and payable on February 28, 2006.

All payments of principal and accrued interest shall be payable in lawful money of the United States of America at 7 Sylvan Way, Parsippany, New Jersey 07054, or at such other place as may hereafter be designated by written notice from the Holder to the Maker.

If any installment of principal is not paid when due; or Maker becomes insolvent or any suit or proceeding is commenced against the Maker alleging that the Maker is insolvent or not generally paying its debts as they become due; or if any bankruptcy, receivership, or like proceeding be instituted by or against Maker for all or any material portion of Maker's property; or Maker executes an assignment for the benefit of creditors, or dissolves, liquidates, merges, sells substantially all of its assets, consolidates, or takes any action in contemplation of any such action: or if, except as expressly permitted under the Franchise Agreement hereinafter referred to, Maker shall convey, sell, transfer, donate or lease all or any portion of its interest in the Territory referred to above or if Holder shall give Maker notice of default or termination under the Franchise Agreement between such parties, authorizing Maker to operate such Territory under the Jackson Hewitt System; or should Holder otherwise deem itself insecure, then without notice or demand of any kind, Holder may accelerate the maturity of this Note and the principal and accrued interest of this Note shall be immediately due and payable.

No failure to accelerate the debt evidenced by reason of default hereunder, acceptance of a past-due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or any other right granted to Holder hereunder or by the laws of the State of New Jersey, and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing. This Note may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

If any installment hereof is not paid when due, or the principal of this Note is accelerated and is not paid within ten (10) days thereafter, the outstanding installment or the accelerated balance of this Note shall bear simple interest at a rate equal to the lesser of eighteen (18%) per annum or the maximum interest rate allowable by law, from its due date

JH09-02 (Amendment) PROMISSORY NOTE.DOC                    1

until paid.  Should this Note or any part of the indebtedness evidenced hereby be collected by or through an attorney at law, the Holder shall be entitled to collect and Maker shall reimburse to Holder all costs of collection including court costs and reasonable attorneys' fees.

Each person liable hereon, whether maker or endorser, hereby waives presentment, demand, notice of demand, protest, notice of non-payment, notice of protest, notice of dishonor and diligence in collection.  This Note shall be paid without claim of setoff, counterclaim or deduction of any nature or for any cause whatsoever.  Maker has the right to prepay this Note, in whole or in part, at any time, without premium or penalty.  Any partial payment shall not affect the due date of (the balance of) any future payment required under this Note.

Maker hereby waives and renounces for itself and its successors, heirs and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and any state thereof, both as to Maker and in and to all of Maker's property, real and personal, against the enforcement and collection of the obligation evidenced by this Note.  Maker hereby transfers, conveys and assigns to Holder a sufficient amount of any such homestead or exemption as may be set apart in bankruptcy to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Whenever used herein the terms "Holder" and "Maker" shall be construed in the singular or plural, and any pronoun used herein shall cover all genders as the context may require or admit, and shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law.  All references to "Maker" shall mean and include the named Maker and all Co-Makers, guarantors, sureties and accommodation parties signing or endorsing this Note.  This Note shall be governed and construed according to the laws of the State of New Jersey.

WAIVER OF JURY TRIAL.  THE MAKER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IF ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS PROMISSORY NOTE.

IN WITNESS WHEREOF, Maker has executed this Note under seal as of the date first above written.

(Corporate Seal)

ATTEST:                                             MAKER: Kendor, Inc.

By:_____          By:_____
    Name:                                                   Name: Kenneth Harris
    Title:                                                     Title: President

    WITNESS:                                         CO-MAKERS

By:_____          By:_____
    Name:                                                   Name: Kenneth Harris, individually

By:_____          By:_____
    Name:                                                   Name: Chris Hargett, individually

By:_____          By:_____
    Name:                                                   Name: Joyce Snelling, individually

JH09-02 (Amendment) PROMISSORY NOTE.DOC                    2

**EXHIBIT D-1**
# PROMISSORY NOTE

$ 19,000.00                                       Parsippany, New Jersey
Entity Number: 2411                               Date: August 19, 2002
Territory Number(s):  AL040

    FOR VALUE RECEIVED, the undersigned, Kendor, Inc., 1718 Mt. Meigs Road, Montgomery, AL  36107 ("Maker"), and Kenneth Harris, 1430 Rosemil Drive, Montgomery, AL  36117, Chris Hargett, 948 Excelsior Drive, Montgomery, AL  36117, and Joyce Snelling, 6709 Wood Glen Court, Montgomery, AL  36117 ("Co-Maker"), jointly and severally, promise to pay to the order of Jackson Hewitt, Inc. at 339 Jefferson Road, Parsippany, NJ, a Virginia corporation ("Holder"), in the manner hereinafter specified, the principal sum of  NINETEEN THOUSAND DOLLARS ($19,000.00) with interest at the rate of nine percent (9%) per annum, on the unpaid principal and any past due interest computed from the date above.

This Note shall be payable per the following terms:

**$6, 333.00 plus interest due and payable on 2/28/03.**
**$6, 333.00 plus interest due and payable on 2/28/04.**
**$6, 334.00 plus interest due and payable on 2/28/05.**

    All outstanding principal and accrued interest shall be due and payable on February 28, 2005.

    All payments of principal and accrued interest shall be payable in lawful money of the United States of America at 339 Jefferson Road, Parsippany, New Jersey 07054, or at such other place as may hereafter be designated by written notice from the Holder to the Maker.

    If any installment of principal is not paid when due; or Maker becomes insolvent or any suit or proceeding is commenced against the Maker alleging that the Maker is insolvent or not generally paying its debts as they become due; or if any bankruptcy, receivership, or like proceeding be instituted by or against Maker for all or any material portion of Maker's property; or Maker executes an assignment for the benefit of creditors, or dissolves, liquidates, merges, sells substantially all of its assets, consolidates, or takes any action in contemplation of any such action: or if, except as expressly permitted under the Franchise Agreement hereinafter referred to, Maker shall convey, sell, transfer, donate or lease all or any portion of its interest in the Territory referred to above or if Holder shall give Maker notice of default or termination under the Franchise Agreement between such parties, authorizing Maker to operate such Territory under the Jackson Hewitt System; or should Holder otherwise deem itself insecure, then without notice or demand of any kind, Holder may accelerate the maturity of this Note and the principal and accrued interest of this Note shall be immediately due and payable.

    No failure to accelerate the debt evidenced by reason of default hereunder, acceptance of a past-due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or any other right granted to Holder hereunder or by the laws of the State of New Jersey, and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing.  No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing.  This Note may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

    If any installment hereof is not paid when due, or the principal of this Note is accelerated and is not paid within ten (10) days thereafter, the outstanding installment or the accelerated balance of this Note shall bear simple interest at a

rate equal to the lesser of eighteen (18%) per annum or the maximum interest rate allowable by law, from its due date until paid. Should this Note or any part of the indebtedness evidenced hereby be collected by or through an attorney at law, the Holder shall be entitled to collect and Maker shall reimburse to Holder all costs of collection including court costs and reasonable attorneys' fees.

Each person liable hereon, whether maker or endorser, hereby waives presentment, demand, notice of demand, protest, notice of non-payment, notice of protest, notice of dishonor and diligence in collection. This Note shall be paid without claim of setoff, counterclaim or deduction of any nature or for any cause whatsoever. Maker has the right to prepay this Note, in whole or in part, at any time, without premium or penalty. Any partial payment shall not affect the due date of (the balance of) any future payment required under this Note.

Maker hereby waives and renounces for itself and its successors, heirs and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and any state thereof, both as to Maker and in and to all of Maker's property, real and personal, against the enforcement and collection of the obligation evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of any such homestead or exemption as may be set apart in bankruptcy to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Whenever used herein the terms "Holder" and "Maker" shall be construed in the singular or plural, and any pronoun used herein shall cover all genders as the context may require or admit, and shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law. All references to "Maker" shall mean and include the named Maker and all Co-Makers, guarantors, sureties and accommodation parties signing or endorsing this Note. This Note shall be governed and construed according to the laws of the State of New Jersey.

<u>WAIVER OF JURY TRIAL.</u>   THE MAKER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IF ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS PROMISSORY NOTE.

IN WITNESS WHEREOF, Maker has executed this Note under seal as of the date first above written.

(Corporate Seal)

ATTEST:                                                  MAKER:

By:_____            By:_____
    Name:                                                   Name: Kendor, Inc.
    Title:                                                      Title:

WITNESS:                                               CO-MAKER

By:_____            By:_____
    Name:                                                   Name: Kenneth Harris

                                                              By:_____
                                                                  Name: Chris Harbett

                                                              By:_____
                                                                  Name: Joyce Snelling

### EXHIBIT D-1
## PROMISSORY NOTE

$ 19,000.00

Parsippany, New Jersey

Entity Number: 2411

Date: August 19, 2002

Territory Number(s): AL041

FOR VALUE RECEIVED, the undersigned, Kendor, Inc., 1718 Mt. Meigs Road, Montgomery, AL 36107 ("Maker"), and Kenneth Harris, 1430 Rosemil Drive, Montgomery, AL 36117, Chris Hargett, 948 Excelsior Drive, Montgomery, AL 36117, and Joyce Snelling, 6709 Wood Glen Court, Montgomery, AL 36117 ("Co-Maker"), jointly and severally, promise to pay to the order of Jackson Hewitt, Inc. at 339 Jefferson Road, Parsippany, NJ, a Virginia corporation ("Holder"), in the manner hereinafter specified, the principal sum of NINETEEN THOUSAND DOLLARS ($19,000.00) with interest at the rate of nine percent (9%) per annum, on the unpaid principal and any past due interest computed from the date above.

This Note shall be payable per the following terms:

<u>$6,333.00 plus interest due and payable on 2/28/03.</u>
<u>$6,333.00 plus interest due and payable on 2/28/04.</u>
<u>$6,334.00 plus interest due and payable on 2/28/05.</u>

All outstanding principal and accrued interest shall be due and payable on February 28, 2005.

All payments of principal and accrued interest shall be payable in lawful money of the United States of America at 339 Jefferson Road, Parsippany, New Jersey 07054, or at such other place as may hereafter be designated by written notice from the Holder to the Maker.

If any installment of principal is not paid when due; or Maker becomes insolvent or any suit or proceeding is commenced against the Maker alleging that the Maker is insolvent or not generally paying its debts as they become due; or if any bankruptcy, receivership, or like proceeding be instituted by or against Maker for all or any material portion of Maker's property; or Maker executes an assignment for the benefit of creditors, or dissolves, liquidates, merges, sells substantially all of its assets, consolidates, or takes any action in contemplation of any such action: or if, except as expressly permitted under the Franchise Agreement hereinafter referred to, Maker shall convey, sell, transfer, donate or lease all or any portion of its interest in the Territory referred to above or if Holder shall give Maker notice of default or termination under the Franchise Agreement between such parties, authorizing Maker to operate such Territory under the Jackson Hewitt-System; or should Holder otherwise deem itself insecure, then without notice or demand of any kind, Holder may accelerate the maturity of this Note and the principal and accrued interest of this Note shall be immediately due and payable.

No failure to accelerate the debt evidenced by reason of default hereunder, acceptance of a past-due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or any other right granted to Holder hereunder or by the laws of the State of New Jersey, and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing. No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing. This Note may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

If any installment hereof is not paid when due, or the principal of this Note is accelerated and is not paid within ten (10) days thereafter, the outstanding installment or the accelerated balance of this Note shall bear simple interest at a

rate equal to the lesser of eighteen (18%) per annum or the maximum interest rate allowable by law, from its due date until paid. Should this Note or any part of the indebtedness evidenced hereby be collected by or through an attorney at law, the Holder shall be entitled to collect and Maker shall reimburse to Holder all costs of collection including court costs and reasonable attorneys' fees.

Each person liable hereon, whether maker or endorser, hereby waives presentment, demand, notice of demand, protest, notice of non-payment, notice of protest, notice of dishonor and diligence in collection. This Note shall be paid without claim of setoff, counterclaim or deduction of any nature or for any cause whatsoever. Maker has the right to prepay this Note, in whole or in part, at any time, without premium or penalty. Any partial payment shall not affect the due date of (the balance of) any future payment required under this Note.

Maker hereby waives and renounces for itself and its successors, heirs and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and any state thereof, both as to Maker and in and to all of Maker's property, real and personal, against the enforcement and collection of the obligation evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of any such homestead or exemption as may be set apart in bankruptcy to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Whenever used herein the terms "Holder" and "Maker" shall be construed in the singular or plural, and any pronoun used herein shall cover all genders as the context may require or admit, and shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law. All references to "Maker" shall mean and include the named Maker and all Co-Makers, guarantors, sureties and accommodation parties signing or endorsing this Note. This Note shall be governed and construed according to the laws of the State of New Jersey.

WAIVER OF JURY TRIAL.   THE MAKER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IF ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS PROMISSORY NOTE.

IN WITNESS WHEREOF, Maker has executed this Note under seal as of the date first above written.

(Corporate Seal) ____

**ATTEST:**

By:_____
    Name:
    Title:

WITNESS:

By:_____
    Name:

**MAKER:**

By:_____
    Name: Kendor, Inc.
    Title:

CO-MAKER

By:_____
    Name: Kenneth Harris

By:_____
    Name: Chris Hargett

By:_____
    Name: Joyce Snelling

**EXHIBIT D-1**
**PROMISSORY NOTE**

$ 19,000.00

Entity Number: 2411

Territory Number(s):  AL043

Parsippany, New Jersey

Date: August 19, 2002

FOR VALUE RECEIVED, the undersigned, Kendor, Inc., 1718 Mt. Meigs Road, Montgomery, AL  36107 ("Maker"), and Kenneth Harris, 1430 Rosemil Drive, Montgomery, AL  36117, Chris Hargett, 948 Excelsior Drive, Montgomery, AL  36117, and Joyce Snelling, 6709 Wood Glen Court, Montgomery, AL  36117 ("Co-Maker"), jointly and severally, promise to pay to the order of Jackson Hewitt, Inc. at 339 Jefferson Road, Parsippany, NJ, a Virginia corporation ("Holder"), in the manner hereinafter specified, the principal sum of  NINETEEN THOUSAND DOLLARS ($19,000.00) with interest at the rate of nine percent (9%) per annum, on the unpaid principal and any past due interest computed from the date above.

This Note shall be payable per the following terms:

**$6, 333.00 plus interest due and payable on 2/28/03.**
**$6, 333.00 plus interest due and payable on 2/28/04.**
**$6, 334.00 plus interest due and payable on 2/28/05.**

All outstanding principal and accrued interest shall be due and payable on February 28, 2005.

All payments of principal and accrued interest shall be payable in lawful money of the United States of America at 339 Jefferson Road, Parsippany, New Jersey 07054, or at such other place as may hereafter be designated by written notice from the Holder to the Maker.

If any installment of principal is not paid when due; or Maker becomes insolvent or any suit or proceeding is commenced against the Maker alleging that the Maker is insolvent or not generally paying its debts as they become due; or if any bankruptcy, receivership, or like proceeding be instituted by or against Maker for all or any material portion of Maker's property; or Maker executes an assignment for the benefit of creditors, or dissolves, liquidates, merges, sells substantially all of its assets, consolidates, or takes any action in contemplation of any such action: or if, except as expressly permitted under the Franchise Agreement hereinafter referred to, Maker shall convey, sell, transfer, donate or lease all or any portion of its interest in the Territory referred to above or if Holder shall give Maker notice of default or termination under the Franchise Agreement between such parties, authorizing Maker to operate such Territory under the Jackson Hewitt System; or should Holder otherwise deem itself insecure, then without notice or demand of any kind, Holder may accelerate the maturity of this Note and the principal and accrued interest of this Note shall be immediately due and payable.

No failure to accelerate the debt evidenced by reason of default hereunder, acceptance of a past-due installment, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the indebtedness evidenced hereby or as a waiver of such right of acceleration or any other right granted to Holder hereunder or by the laws of the State of New Jersey, and Maker hereby expressly waives the benefit of any statute or rule of law or equity now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the foregoing.  No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part, unless Holder agrees otherwise in writing.  This Note may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

If any installment hereof is not paid when due, or the principal of this Note is accelerated and is not paid within ten (10) days thereafter, the outstanding installment or the accelerated balance of this Note shall bear simple interest at a

rate equal to the lesser of eighteen (18%) per annum or the maximum interest rate allowable by law, from its due date until paid. Should this Note or any part of the indebtedness evidenced hereby be collected by or through an attorney at law, the Holder shall be entitled to collect and Maker shall reimburse to Holder all costs of collection including court costs and reasonable attorneys' fees.

Each person liable hereon, whether maker or endorser, hereby waives presentment, demand, notice of demand, protest, notice of non-payment, notice of protest, notice of dishonor and diligence in collection. This Note shall be paid without claim of setoff, counterclaim or deduction of any nature or for any cause whatsoever. Maker has the right to prepay this Note, in whole or in part, at any time, without premium or penalty. Any partial payment shall not affect the due date of (the balance of) any future payment required under this Note.

Maker hereby waives and renounces for itself and its successors, heirs and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, appraisement, exemption and homestead now provided, or which may hereafter be provided by the Constitution and laws of the United States of America and any state thereof, both as to Maker and in and to all of Maker's property, real and personal, against the enforcement and collection of the obligation evidenced by this Note. Maker hereby transfers, conveys and assigns to Holder a sufficient amount of any such homestead or exemption as may be set apart in bankruptcy to pay this Note in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Holder a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby, or any renewal thereof, and does hereby appoint Holder the attorney-in-fact for Maker to claim any and all homestead exemptions allowed by law.

Whenever used herein the terms "Holder" and "Maker" shall be construed in the singular or plural, and any pronoun used herein shall cover all genders as the context may require or admit, and shall be deemed to include their respective heirs, successors, legal representatives and assigns, whether by voluntary action of the parties or by operation of law. All references to "Maker" shall mean and include the named Maker and all Co-Makers, guarantors, sureties and accommodation parties signing or endorsing this Note. This Note shall be governed and construed according to the laws of the State of New Jersey.

WAIVER OF JURY TRIAL. THE MAKER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IF ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS PROMISSORY NOTE.

IN WITNESS WHEREOF, Maker has executed this Note under seal as of the date first above written.

(Corporate Seal)  ____

ATTEST:

By:_____
　　Name:
　　Title:

WITNESS:

By:_____
　　Name:

MAKER:

By:_____
Name: Kendor, Inc.
Title:

CO-MAKER

By:_____
Name: Kenneth Harris

By:_____
Name: Chris Hargett

By:_____
Name: Joyce Snelling

# EXHIBIT I

408481A01020504

**EXHIBIT G**

**DEVELOPMENT ADVANCE NOTE**

Montgomery, AL          August 19, 2002
City and State          Date

$51,418.00          Territories:     AL041 & AL040

The undersigned Kendor, Inc. ("Maker") has entered into franchise agreements (the "Franchise Agreements") with JACKSON HEWITT INC. or its successors or assigns ("Holder") for the Territories described above.

Maker is an independent owner and operator of a tax preparation business that has agreed to convert its existing business into a Jackson Hewitt Tax Service® Franchised Business (as defined in the Franchise Agreement).

Maker represents and warrants that its Gross Volume of Business (as defined in the Franchise Agreement) for the Tax Season (as defined in the Franchise Agreement) ending April 15, 2002 (the "Base Tax Season"), in the Territories was $68,557.00.

Holder has agreed to lend to Maker certain amounts of money, not to exceed the principal sum of Fifty One Thousand Four Hundred Eighteen Dollars ($51,418.00) (the "Principal") in accordance with the terms and provisions of this promissory note ("Note").

A portion of the Principal in the amount of Twenty Thousand Five Hundred Sixty Seven Dollars ($20,567.00) (the "First Payment") shall be lent to Maker at such time as Maker is in full compliance with the provisions of the Franchise Agreements, has completed Business Management Training (as defined in the Franchise Agreement) and has opened its business as a Jackson Hewitt Tax Service.

On June 15, 2003, provided Maker is in full compliance with this Note and the Franchise Agreements, Holder shall lend to Maker the principal amount of Thirty Thousand Eight Hundred Fifty One Dollars ($30,851.00) (the "Second Payment"). If Maker is not in compliance with the Performance Criteria (as defined below) on June 15, 2003, Holder, at its sole discretion, may provide Maker the following Tax Season (as defined in the Franchise Agreement) to comply with the Performance Criteria. (Example: At June 15, 2003, Maker prepared 80% of the returns processed for the Base Tax Season. Holder provides Maker a cure period. At June 15, 2004, Maker prepared at least 90% of the returns processed for the Base Tax Season. Maker, at June 15, 2004, would be in compliance for Tax Season 2003 and Tax Season 2004.)

FOR GOOD AND VALUABLE CONSIDERATION, Maker promises to pay to Holder or order, on June 15, 2011, at 339 Jefferson Road, Parsippany, New Jersey 07054 or at such other place as Holder may from time to time designate, in writing, any outstanding Principal which amount shall, except as set forth below, bear no interest.

If (a) Maker is not in default with respect to its obligations under the Franchise Agreements for the Territories listed above, as may be amended (including payment of any fees thereunder) and (b) the offices located in the Territories named above have a Gross Volume of Business for each Tax Season (as defined in the Franchise Agreement) thereafter of at least 90% of the Gross Volume of Business for the Base Tax Season and shall process at least 388 returns (being at least 90% of the federal income tax returns processed for the Base Tax Season) (collectively, the "Performance Criteria"), then on each June 15th during the term of this Note, the following portions of the Principal shall be forgiven:

> June 15, 2003 and each June 15th thereafter – 10% of the First Payment
> June 15, 2004 and each June 15th thereafter – 11.11% of the Second Payment

On each such June 15th, to the extent no Principal has been forgiven on such date, an amount equal to the Principal not forgiven shall become due and payable. Notwithstanding the preceding sentence, if Maker is not in compliance with the Performance Criteria on any June 15th during the first nine (9) years under this Note, Holder, at its sole discretion, may provide Maker the following Tax Season to comply with the Performance Criteria before

Case 2:04-cv-00851-WHW-SDW Document 1-6 Filed 02/23/04 Page 29 of 41 PageID: 239

Maker is required to make any Principal payment. (Example: At June 15, 2006, Maker prepared 80% of the returns processed for the Base Tax Season. Holder provides Maker a cure period. At June 15, 2007, Maker prepared at least 90% of the returns processed for the Base Tax Season. Maker, at June 15, 2007, would be in compliance for Tax Season 2006 and Tax Season 2007.)

In the event Maker fails to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

All payments shall be made without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker is in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, co-maker, endorser, surety or guarantor of this Note (i) fails to meet the Performance Criteria for any Tax Season and no cure period is provided by Holder, (ii) suspends business in the Territories; (iii) becomes insolvent or offers settlement to any creditors; (iv) files a petition in bankruptcy, either voluntary or involuntary; (v) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of debtors; (vi) makes an assignment for the benefit of creditors; or (vii) makes any false statement or representation orally or in writing, fails to furnish information, or fails to permit inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's sole opinion, of any other agreement or note between Maker and Holder related to the Franchise Agreements or the Territories or (D) upon termination or expiration of the Franchise Agreements. For the purposes of this Note, Maker shall be in default of an agreement if Maker shall have been given notice of such default in accordance with the terms of any such agreement, and, as to those defaults for which the Maker is afforded an opportunity to cure pursuant to such agreement, Maker shall have failed to make such cure within the applicable period provided. Maker's obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset, recoupment, deduction or counterclaim of any kind.

Maker agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, presentment, demand of payment, notice of non-payment, notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations or, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is executed in connection with the opening of a tax preparation business acquired from another entity, Maker acknowledges and agrees that neither Holder nor any of its affiliates has participated in the negotiation of any terms and conditions of or in any other aspect of such acquisition. Further, Maker acknowledges and agrees that neither Holder nor any of its affiliates has participated in the drafting of any documentation (legal or otherwise) which memorializes the terms and conditions of such acquisition. Additionally, Maker acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information, to Maker concerning any aspect of the Franchise Agreement or the acquisition. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition. Maker expressly acknowledges that Holder and its affiliates provided no professional, financial, investment or advisory services in connection with the acquisition and related transactions and that neither Holder nor any of its affiliates has any

liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, all co-makers, guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker has executed this Note as of the date first set forth above.

**MAKER: Kendor, Inc.**

By:/s/ _____ SEAL.

Name: __Kenneth Harris_____

Title: __President_____

By:/s/ _____ SEAL.

Name: __Chris Hargett_____

Title: __Vice President_____

By:/s/ _____ SEAL

Name: __Joyce Snelling_____

Title: __Secretary_____

**CO-MAKER(S):**

_____

Printed Name: Kenneth Harris, individually

_____

Printed Name: Chris Hargett, individually

_____

Printed Name: Joyce Snelling, individually

# EXHIBIT J

## EXHIBIT G

## DEVELOPMENT ADVANCE NOTE

Montgomery, AL
City and State

Date   August 19, 2002

$241,566

Territory:   AL038

    The undersigned Kendor, Inc. ("Maker") has entered into a franchise agreement (the "Franchise Agreement") with JACKSON HEWITT INC. or its successors or assigns ("Holder") for the Territory described above.

    Maker is an independent owner and operator of a tax preparation business that has agreed to convert its existing business into a Jackson Hewitt Tax Service® Franchised Business (as defined in the Franchise Agreement).

    Maker represents and warrants that its Gross Volume of Business (as defined in the Franchise Agreement) for the Tax Season (as defined in the Franchise Agreement) ending April 15, 2002 (the "Base Tax Season") was $288,755.00.

    Holder has agreed to lend to Maker certain amounts of money, not to exceed the principal sum of Two Hundred Forty One Thousand Five Hundred Sixty Six Dollars ($241,566.00) (the "Principal") in accordance with the terms and provisions of this promissory note ("Note"). A portion of the Principal in the amount of Twenty Five Thousand Dollars ($25,000.00) (the "Base Payment") shall be provided to Maker within three weeks of the execution of the Franchise Agreement.

    A portion of the Principal in the amount of Eighty Six Thousand Six Hundred Twenty Six Dollars ($86,626.00) (the "First Payment") shall be lent to Maker at such time as Maker is in full compliance with the provisions of the Franchise Agreement, has completed Business Management Training (as defined in the Franchise Agreement) and has opened its business as a Jackson Hewitt Tax Service.

    On June 15, 2003, provided Maker is in full compliance with this Note and the Franchise Agreement, Holder shall lend to Maker the principal amount of One Hundred Twenty Nine Thousand Nine Hundred Forty Dollars ($129,940.00) (the "Second Payment"). If Maker is not in compliance with the Performance Criteria (as defined below) on June 15, 2003, Holder, at its sole discretion, may provide Maker the following Tax Season (as defined in the Franchise Agreement) to comply with the Performance Criteria. (Example: At June 15, 2003, Maker prepared 80% of the returns processed for the Base Tax Season. Holder provides Maker a cure period. At June 15, 2004, Maker prepared at least 90% of the returns processed for the Base Tax Season. Maker, at June 15, 2004, would be in compliance for Tax Season 2003 and Tax Season 2004.)

    FOR GOOD AND VALUABLE CONSIDERATION, Maker promises to pay to Holder or order, on June 15, 2011, at 339 Jefferson Road, Parsippany, New Jersey 07054 or at such other place as Holder may from time to time designate, in writing, any outstanding Principal which amount shall, except as set forth below, bear no interest.

    If (a) Maker is not in default with respect to its obligations under the Franchise Agreement for the Territory listed above, as may be amended (including payment of any fees thereunder) and (b) the offices located in the Territory named above have a Gross Volume of Business for each Tax Season (as defined in the Franchise Agreement) thereafter of at least 90% of the Gross Volume of Business for the Base Tax Season and shall process at least 1,485 returns (being at least 90% of the federal income tax returns processed for the Base Tax Season) (collectively, the "Performance Criteria"), then on each June 15th during the term of this Note, the following portions of the Principal shall be forgiven:

        June 15, 2003 and each June 15th thereafter   10% of the Base Payment
        June 15, 2003 and each June 15th thereafter – 10% of the First Payment
        June 15, 2004 and each June 15th thereafter – 11.11% of the Second Payment

On each such June 15th, to the extent no Principal has been forgiven on such date, an amount equal to the Principal not forgiven shall become due and payable. Notwithstanding the preceding sentence, if Maker is not in compliance with the Performance Criteria on any June 15th during the first nine (9) years under this Note, Holder, at its sole discretion, may provide Maker the following Tax Season to comply with the Performance Criteria before Maker is required to make any Principal payment. (Example: At June 15, 2006, Maker prepared 80% of the returns processed for the Base Tax Season. Holder provides Maker a cure period. At June 15, 2007, Maker prepared at least 90% of the returns processed for the Base Tax Season. Maker, at June 15, 2007, would be in compliance for Tax Season 2006 and Tax Season 2007.)

In the event Maker fails to make any payment when due, including any payment due upon acceleration of this Note, the entire outstanding Principal shall thereafter bear simple interest at a rate equal to the lesser of eighteen percent (18%) per annum or the highest rate allowed by law from its due date until paid in full.

All payments shall be made without set-off, offset, recoupment, deduction or counterclaim of any kind whatsoever. Payments, when made, shall first be applied to accrued and unpaid interest, if any, and then to Principal.

Maker may prepay this Note in whole or in part on any date without premium or penalty. No partial prepayment shall extend or postpone the due date of any subsequent installment payment or change the amount of the installment payment. Prepayments will be applied without notation on this Note.

Holder of this Note may determine that Maker is in default and may accelerate the unpaid Principal and all interest accrued thereon to become immediately due and payable, without presentment for payment or any notice or demand, (A) if Maker, co-maker, endorser, surety or guarantor of this Note (i) fails to meet the Performance Criteria for any Tax Season and no cure period is provided by Holder, (ii) suspends business in the Territory; (iii) becomes insolvent or offers settlement to any creditors; (iv) files a petition in bankruptcy, either voluntary or involuntary; (v) institutes any proceeding under any bankruptcy or insolvency laws relating to the relief of debtors; (vi) makes an assignment for the benefit of creditors; or (vii) makes any false statement or representation orally or in writing, fails to furnish information, or fails to permit inspection of any books or records on demand of Holder, (B) upon default in payment of any Principal payment due hereunder, (C) upon default, in Holder's sole opinion, of any other agreement or note between Maker and Holder related to the Franchise Agreement or the Territory or (D) upon termination or expiration of the Franchise Agreement. For the purposes of this Note, Maker shall be in default of an agreement if Maker shall have been given notice of such default in accordance with the terms of any such agreement; and, as to those defaults for which the Maker is afforded an opportunity to cure pursuant to such agreement, Maker shall have failed to make such cure within the applicable period provided. Maker's obligation to pay the Principal and interest thereon, if accelerated, shall be absolute and unconditional, and shall not be subject to any rights of set-off, offset, recoupment, deduction or counterclaim of any kind.

Maker agrees to pay all expenditures made in any attempt to collect any amounts due pursuant to this Note. If any legal action is necessary to enforce or collect this Note, the prevailing party shall be entitled to reasonable attorney's fees (including in-house attorneys) and court costs and all costs of collection in addition to any other relief to which that party may be entitled.

Maker and all endorsers or guarantors of this Note, and each of them, hereby waive, to the fullest extent permitted by law, diligence, presentment, demand of payment, notice of non-payment, notice of protest and specifically consent to and waive notice of any renewals, extensions, amendments or modifications of this Note, whether made to or in favor of Maker or any other person or persons. Holder reserves the right to modify the terms of this Note, grant extensions, notations, renewals, releases, discharges, compositions and compromises with any party liable under this Note, with or without any notice to or the consent of, and without discharging or affecting the obligations or, any other party liable under this Note. The claiming of any statute of limitations as a defense to any demand against Maker or any endorser or guarantor is expressly waived by each and all of said parties.

If this Note is executed in connection with the opening of a tax preparation business acquired from another entity, Maker acknowledges and agrees that neither Holder nor any of its affiliates has participated in the negotiation of any terms and conditions of or in any other aspect of such acquisition. Further, Maker acknowledges and agrees that neither Holder nor any of its affiliates has participated in the drafting of any documentation (legal or otherwise) which memorializes the terms and conditions of such acquisition. Additionally, Maker acknowledges and agrees that neither Holder nor any of its affiliates has made any representations or warranties, nor furnished any information, to Maker concerning any aspect of the Franchise Agreement or the acquisition. Additionally, Maker acknowledges and agrees that it has not relied on any representations made by Holder or any of its affiliates in deciding to complete the acquisition and related transactions. Maker waives any and all claims against Holder and

its officers, directors, shareholders, affiliates, employees and agents arising out of the acquisition. Maker expressly acknowledges that Holder and its affiliates provided no professional, financial, investment or advisory services in connection with the acquisition and related transactions and that neither Holder nor any of its affiliates has any liability in connection therewith. Maker acknowledges and agrees that it has completed any due diligence and other investigations of the acquired office as Maker deemed appropriate.

This Note shall be construed and enforced in accordance with the laws of the State of New Jersey. The terms of this Note are confidential and will not be disclosed to any third party by Maker without the prior written consent of Holder, unless otherwise required by law.

This Note shall be the joint and several obligation of Maker, all co-makers, guarantors and endorsers, if any, and shall be binding upon them and their heirs, executors, personal representatives, successors and assigns and shall inure to the benefit of Holder and its successors and assigns. This Note shall not be assignable by Maker without the prior written consent of Holder.

IN WITNESS WHEREOF, the undersigned Maker has executed this Note as of the date first set forth above.

MAKER: Kendor, Inc.

By: /s/ _____ SEAL

Name: Kenneth Harris

Title: President

By: /s/ _____ SEAL

Name: Chris Hargett

Title: Vice President

By: /s/ _____ SEAL

Name: Joyce Snelling

Title: Secretary

CO-MAKER(S):

/s/ _____
Printed Name: Kenneth Harris, individually

/s/ _____
Printed Name: Chris Hargett, individually

/s/ _____
Printed Name: Joyce Snelling, individually

# EXHIBIT K



August 13, 2003

Kenneth Harris and Joyce Snelling
Jackson Hewitt Tax Service #2411
1718 Mt. Meigs Road
Montgomery, AL 36107

*Re:   Notice of Intent to Terminate Kendor, Inc.'s (hereinafter referred to as "You") Franchise Agreement(s) (hereinafter referred to as the "Agreement(s)") by and between you and Jackson Hewitt Inc. (hereinafter referred to as "Jackson Hewitt") to operate in the specific Territory(ies) Al038, AL039, AL040, AL041 and AL043.*

Dear Mr. Harris and Ms. Snelling:

This letter is to advise you that you are in default of the terms of your Franchise Agreement(s) (the "Agreement(s)") for failing to remit timely payments for royalties and advertising fees under the Agreement(s) and installment payments under the promissory note(s) relating thereto.  If you fail to cure the following payment defaults within thirty (30) days we will be forced to terminate the above referenced Agreement(s):

    1.   <u>Royalties and Advertising Fees</u>.  As of today, you are past due on payments for royalties and advertising fees under the Agreement(s) in the total amount of $101,619.42; and

    2.   <u>Promissory Note Installment Payments</u>.  As of today, you are past due on payments under your Promissory Note(s) in the amount of $20,708.82.

Accordingly, please immediately contact Ms. Jan Schwarzenbach, Accounts Receivable Manager at (973) 496-2754 to discuss payment of such debt.  If you are unable to satisfy such debt within thirty days, we may be willing to consider a payment plan as long as a significant amount of such debt is paid within thirty days and the balance by December 31, 2003.  We trust that you recognize the seriousness of this matter and expect you to take the appropriate steps to cure your default without delay.

Nothing contained in this letter shall be considered a waiver of any rights or remedies of Jackson Hewitt Inc. under the Agreement(s) or Promissory Note(s) or at law or in equity, all of which are hereby expressly reserved by Jackson Hewitt.

Sincerely,

David Green
Director
Franchise Sales Administration
and Compliance

cc:    Curt Hapward
        Ed Redrow
        Kelly Lueddeke
        Jan Schwarzenbach

# EXHIBIT L

**JACKSON HEWITT**
TAX SERVICE

September 16, 2003

Kenneth Harris and Joyce Snelling
Jackson Hewitt Tax Service #2411
1718 Mt. Meigs Road
Montgomery, AL 36107

*Re:* *Termination of Kendor, Inc.'s (hereinafter referred to as "You") Franchise Agreements (hereinafter referred to as the "Agreements") by and between you and Jackson Hewitt Inc. (hereinafter referred to as "Jackson Hewitt") to operate in the specific Territories AL038, AL039, AL040, AL041 and AL043.*

Dear Mr. Harris and Ms. Snelling:

We informed you in our letter dated August 13, 2003 of your past due account balances and promissory note installments and that we have the right to terminate your Franchise Agreements if this default was not cured. As of the date of this letter, you have not brought these account balances current. Therefore, Jackson Hewitt terminates your right to operate in the above referenced Territories underline effective September 17, 2003 as a result of your failure to pay your financial obligations in accordance with the terms of the Agreements.

Please note, according to your Franchise Agreements we have the right to demand full payment of all outstanding initial fee promissory note balances, royalty and advertising fees and supply account balances. You currently owe us $103,111.00 in past due royalty and advertising fees; and $20,709.00 in past due Promissory Note installments and interest. Additionally, as a result of this termination, we call your Initial Fee Promissory Note(s) due and payable in full. As of today, the balance due on such Note(s) is $61,561.00. Interest will accrue until paid in full. Thus, as of the date of this letter, your total amount owed to us for the Initial Fee Promissory Note(s) and the past due royalty and advertising fees is One Hundred Eighty Five Thousand Three Hundred Eighty One and 00/100 Dollars ($185,381.00). In addition, as a result of this termination, all unpaid principal and interest accrued under your Development Advance Note is now immediately due and payable. Interest will accrue until paid in full. Please contact Jan Schwarzenbach at (973) 496-2754 to determine this additional balance. Please bear in mind that you have personally guaranteed both the performance and payment obligations under the Agreements.

In addition to your financial obligations to Jackson Hewitt, you also have other post-termination obligations under the Agreements. First, you must immediately de-identify each location in the above-referenced Territories from their former appearance as Jackson Hewitt System Tax Service offices. Specifically, you must discontinue the use of the Jackson Hewitt Marks, trade dress, signs, and other forms of advertising or indicia that any location is operated as a Jackson Hewitt System Tax Service location. By way of obvious example, this means that all Jackson Hewitt signs on the premises must be removed. Second, please note that each post-termination covenant set forth in your Agreements are now in effect. These covenants include your agreement not to compete with Jackson Hewitt, not to recruit or hire Jackson Hewitt Employees or to solicit former Jackson Hewitt customers and to protect Jackson Hewitt's trade secrets. A more detailed explanation of your post-termination obligations is attached hereto for your reference. An inspection of the Territories will be conducted in the near future to determine compliance.

If you have any questions concerning the foregoing, please do not hesitate to call David Green, Director of Franchise Sales Administration and Compliance, at (973) 496-2750.

Sincerely,

Curt M. Hapward
Vice President
Franchise Sales Administration and Compliance

cc.     David Green
        Ed Redrow
        Kelly Lueddeke
        Jan Schwarzenbach

OJS 44
(Rev: 07/86)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

JACKSON HEWITT, INC., a Virginia Corporation

**DEFENDANTS**

KENDOR, INC., an Alabama corporation; KENNETH HARRIS, an individual. JOYCE SNELLING, an individual; and CHRIS HARGETT, an individual.

**(b)**  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Morris County, New Jersey
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: State of  Alabama County Unknown
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)**  ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Pitney, Hardin, Kipp & Szuch LLP
PO Box 1945
Morristown, New Jersey 07962-1945
(973) 966-6300

ATTORNEYS (IF KNOWN)

Unknown at this time.

**II. BASIS OF JURISDICTION** (PLACE AN [x] IN ONE BOX ONLY)

[ ] 1 U.S. Government Plaintiff

[ ] 3 Federal Question (U.S. Government Not a Party)

[ ] 2 U.S. GOVERNMENT Defendant

[X] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN [x] IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. § 1332
Breach of Contract

**V. NATURE OF SUIT** (PLACE AN [x] IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPC | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400  State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury- Med. | [ ] 620 Food & Drug | [ ] 423 Withdrawal | [ ] 410  Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | Malpractice | [ ] 630 Liquor Laws | 28 USC 157 | [ ] 430  Banks and Banking |
| [ ] 140 Neg Instrument | [ ] 320 Assault, Libel & Slander | [ ] 365 Personal Injury- Product | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 450  Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Liability | [ ] 650 Airline Reqs | [ ] 820 Copyrights | [ ] 460  Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 470  Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 690 Other | [ ] 840 Trademark | [ ] 810  Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | [ ] 850  Securities/Commodities/ Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 875  Customer Challenge 12 USC 3410 |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/ Mgmt. Relations | [ ] 862 Black Lung (923) | |
| [ ] 195 Contract Product Liability | **CIVIL RIGHTS** | [ ] 385 Property Damage Product Liability | [ ] 730 Labor/ Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC (405(g)) | [ ] 891  Agricultural Acts |
| **REAL PROPERTY** | [ ] 441 Voting | | [ ] 740 Railway Labor Act | [ ] 863 DIWW (405(g)) | [ ] 892  Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 442 Employment | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 893  Environmental Matters |
| [ ] 220 Foreclosure | [ ] 443 Housing/ Accommodations | [ ] 510 Motions to Vacate Sentence | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 865 RSI (405(g)) | [ ] 894  Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 444 Welfare | | | **FEDERAL TAX SUITS** | [ ] 895  Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 440 Other Civil Rights | [ ] 530 Habeas Corpus | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900  Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | | [ ] 540 Mandamus & Other | | [ ] 871 IRS-Third Party 26 USC 7609 | [ ] 950  Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | [ ] 890  Other Statutory Actions |

**VI. ORIGIN** (PLACE AN [x] IN ONE BOX ONLY)

[X] 1 Original Proceeding

[ ] 2 Removed from State Court

[ ] 3 Remanded from Appellate Court

[ ] 4 Reinstated or Reopened

[ ] 5 Transferred from Another District (specify)

[ ] 6 Multidistrict Litigation

[ ] 7 Appeal to District Judge From Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A **CLASS ACTION**
[ ] UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint
**JURY DEMAND:** [ ] YES  [x] NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions)

JUDGE                    DOCKET NUMBER

DATE
February 17, 2004

SIGNATURE OF ATTORNEY OF RECORD

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEW JERSEY

JACKSON HEWITT, INC., a Virginia Corporation,

      Plaintiff,

SUMMONS IN A CIVIL ACTION

v.

CASE NUMBER: 04-

KENDOR, INC., an Alabama corporation;
KENNETH HARRIS, an individual, JOYCE
SNELLING, an individual; and CHRIS
HARGETT, an individual,

      Defendants.

TO:    ABOVE NAMED DEFENDANTS

      YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon

PLAINTIFF'S ATTORNEY

          LISA MARTINEZ WOLMART, ESQ.
          Pitney, Hardin, Kipp & Szuch LLP
          P.O. Box 1945
          Morristown, NJ 07962-1945

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

_____
CLERK

_____
DATE

_____
BY DEPUTY CLERK

1125549A01021704